UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
-NORFOLK DIVISION-

TIMOTHY B. BOSTIC, et al.

        Plaintiffs,

v.                                              Case No.: 2:13cv395

JANET M. RAINEY, et al.

        Defendants.

**DEFENDANT SCHAEFER'S BRIEF IN RESPONSE
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendant George E. Schaefer, III, in his official capacity as the Clerk of Court for the Norfolk Circuit Court (hereinafter "Clerk Schaefer" or "Schaefer"), by counsel, and files this Brief in Response to Plaintiff's Motion for Summary Judgment pursuant to Fed. R. Civ. Pro. R. 56, L.R. 7, L.R. 56, and the briefing schedule previously approved by this Court (NEF Doc. 17) as follows:

The parties have agreed to submit this case to the Court on all issues via cross motions for summary judgment. Plaintiffs seek to have this Court declare unconstitutional and unenforceable Va. Const. Art. I, § 15-A and Va. Code §§ 20-45.2—45.3 ("Virginia's Marriage Laws") under the Due Process Clause of the Fourteenth Amendment and under the Equal Protection Clause of the Fourteenth Amendment. This brief is filed in response to Plaintiff's Motion for Summary Judgment and Brief in Support (NEF Docs 27 and 26) and addresses issues not already addressed in Clerk Schaefer's Brief in Support of Summary Judgment. (NEF Doc. 41.) All arguments raised in Clerk Schaefer's Brief in Support of Summary Judgment are incorporated herein.

**Defendant Schaefer's objections to Plaintiffs' alleged "undisputed facts"**

      A.      Clerk Schaefer objects to citations to statutes, attorney general opinions, and other statements of the law as undisputed facts. Specifically, Clerk Schaefer objects to ¶¶ 1-4, 15-18, 24-27, 30-33 & 36-41 to the extent they are merely statements of the law. These items are not facts to be contested or disputed; they are statements of the law which should be addressed in Plaintiffs' argument.

      B.      Clerk Schaefer objects to citations to various forms of media regarding campaign rhetoric or public statements by politicians and political groups as undisputed facts. Specifically, Clerk Schaefer objects to ¶¶ 13-14 & 19-23. To the extent such statements were made or published, Schaefer cannot deny. However, the truth and veracity of all such statements is not to be accepted as undisputed. Such statements were made by politicians or politically motivated groups to whip up voter fervor and drive citizens to the polls to vote for a particular candidate and/or ballot measure. It cannot be accepted as an undisputed fact that such statements regarding homosexuals or same sex relationships were the sole motivation, intent and purpose for passing all of Virginia's Marriage Laws.

      C.      Clerk Schaefer objects to citations to HB 751 (2004) as improper statements of undisputed facts. Specifically, Clerk Schaefer objects to ¶¶ 5-12. Citation to this public record as an undisputed fact is unnecessary and improper. First, it is unnecessary because the Court may take judicial notice of the wording of the bill and its precatory language, the existence of which Schaefer does not deny. However, Schaefer does object to the use of these statements to the extent they are submitted as undisputed facts which are the legislative purpose and intent of the final statute passed by the General Assembly. The portions of HB 751 cited by Plaintiff as undisputed facts were not adopted by the General Assembly and cannot be said to be the intent

of the General Assembly as a whole. The text of the final statute was radically different from the bill as originally proposed. Even if HB 751 reflects a portion of the legislative history, it does not establish as an undisputed fact that it reflects the only motivation, intent and purpose of the final statute.

   D. Clerk Schaefer objects to Plaintiffs' undisputed facts solely applicable to Plaintiffs Schall and Townley. Specifically, Clerk Schaefer objects to ¶¶ 51-71 . The undisputed facts regarding Plaintiffs Schall and Townley have no bearing on the claims against Defendant Schaefer. (Schaefer Br. in Supp. Summ. J. NEF Doc. 41 at 7.)

   E. Clerk Schaefer objects to the use of the "Hate Crime" statistics compiled by Plaintiff's counsel as an undisputed fact. Specifically, Clerk Schaefer objects to ¶ 28. These figures are not reliable enough to be considered under the concept of judicial notice. The website where Plaintiff's counsel obtained such data specifically cautions against the use of the statistics because such use "lead[s] to simplistic and/or incomplete analyses that often create misleading perceptions." Uniform Hate Crime Report, *Hate Crime Statistics 2011, Caution against ranking, available at* http://www.fbi.gov/about-us/cjis/ucr/hate-crime/2011/resources/variables-affecting-crime (last visited October 23, 2013).

   F. Clerk Schaefer objects to Plaintiffs' undisputed facts ¶¶ 34, 49 & 50 to the extent they state or imply Clerk Schaefer personally denied Bostic and London a marriage license, or that Clerk Schaefer denied Bostic and London any right while acting under color of state law. (See Bostic Decl. NEF Doc. 26-1 ¶¶ 6-10; London Decl. NEF Doc. 26-2 ¶¶ 7-70.)

**I.     Rational basis review, not strict or heightened scrutiny, applies to Plaintiffs' Equal Protection and Due Process Claims.**

Marriage has always been limited and regulated by the States. United States v. Windsor, __ U.S. __, 133 S. Ct. 2675 (2013); Hollingsworth v. Perry, __U.S. __, 133 S. Ct. 2652 (2013). The Court in Windsor did not expressly state what standard of review it was applying. The Windsor Court only applied rational basis review rather than heightened or strict scrutiny, although the level is not explicitly stated. Id. at 2706 (Scalia, J. dissenting "I would review this classification only for its rationality. As nearly as I can tell, the Court agrees with that; its opinion does not apply strict scrutiny, and its central propositions are taken from rational-basis cases." (citations omitted)).

Courts should be hesitant to declare a state law unconstitutional when deciding such constitutional questions is not necessary. Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 445 (1988). Of similar importance is the rule of judicial restraint mandating lower courts to apply the established levels of scrutiny and avoid creating new "protected classes" receiving heightened or strict scrutiny. Montgomery v. Carr, 101 F.3d 1117, 1123 (6th Cir. 1996) (recognizing that even though the Supreme Court does not always strictly adhere to the levels of scrutiny rules, the lower courts are bound to apply them). "[B]ecause heightened scrutiny requires an exacting investigation of legislative choices, the Supreme Court has made . . . courts reluctant to establish new suspect classes." Thomasson v. Perry, 80 F.3d 915, 928 (4th Cir. Va. 1996).

Plaintiffs argue that the case of Waters v. Gaston County mandates this Court apply strict scrutiny. The court in Waters stated that strict scrutiny applies in cases where a fundamental right is substantially burdened. Waters v. Gaston County, 57 F.3d 422 (4th Cir. 1995). As

explained in greater detail in Schaefer's Brief in Support of Summary Judgment (NEF Doc. 41 at 11) and Rainey's Brief in Support of Summary Judgment (NEF Doc. 38 at 18-21), the right to same sex marriage is not a fundamental right.  Virginia's Marriage Laws do not affect the fundamental right to marriage as it is traditionally defined.  The cases Plaintiffs rely upon which recognize marriage as a fundamental right were discussing the traditional marriage—two persons of the opposite sex.  (See Pls. Br. Supp. Mot. Summ. J. NEF Doc 26 at 11.)  Moreover, the burden imposed on Plaintiffs by Virginia's Marriage Laws is not substantial.  Schaefer does not deny there is an impact on homosexual couples not permitted to marry in Virginia under Virginia's Marriage Laws.  However, as recognized by Plaintiff"s, those impacts can be limited by proper estate planning, contracts, advanced medical directives, and marriages in other states.  Moreover, just because there is an impact or different treatment does not mean a law is unconstitutional, especially under rational basis review.

> It is settled law that rational basis review 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.' The question is simply whether the legislative classification is rationally related to a legitimate governmental interest.  Under this standard, the Act is entitled to 'a strong presumption of validity,' and must be sustained if 'there is any reasonably conceivable state of facts that could provide a rational basis for the classification.' To sustain the validity of its policy, the government is not required to provide empirical evidence. '[A] legislative choice is not subject to courtroom factfinding . . . .' Rather, 'the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.'

Thomasson v. Perry, 80 F.3d 915, 928 (4th Cir. 1996).

Plaintiffs have not established a history of widespread discrimination against homosexuals as a powerless group, or that the level of discrimination is similar to other recognized protected classes such as race.  Similarly, Plaintiffs attempt to argue that they are discriminated against because they cannot enter into contracts which would protect their rights.

Page 5 of 17

However, this is not true. Former Attorney General McDonnell issued an opinion in 2006 which stated the Marshall/Newman amendment would not affect the validity of wills, contracts, advance medical directives and other similar documents or rights. 2006 Va. AG LEXIS 34 (2006). Virginia's Marriage Laws do not create as onerous of a burden on Plaintiffs as they allude to in their pleadings. For most benefits conferred by marriage, there is an alternative means of obtaining the same or substantially similar benefit through private, civil law means. For example, although unmarried persons may not hold real estate as tenants by the entireties (Pl's. Br. in Supp. Summ. J. NEF Doc. 26 at 4), there are other forms of ownership, such as joint tenancy, which provide for a right of survivorship similar to tenancy by the entireties.

Plaintiffs assert "[t]radition and history are *a manifestly insufficient basis* for a state to impair" a constitutional right. (Pls. Br. Supp. Summ. J. NEF Doc. 26 at 25) (emphasis added). However, this statement of law is *manifestly* incorrect; it is only half of the rule. Although Plaintiffs are partially correct that a law that is centuries old is not immune from constitutional attack, laws that have been followed for centuries will require a strong case to be found unconstitutional. Williams v. Ill., 399 U.S. 235, 239-240 (1970) ("While neither the antiquity of a practice nor the fact of steadfast legislative and judicial adherence to it through the centuries insulates it from constitutional attack, these factors should be weighed in the balance"). Thus the history and tradition of marriages only being recognized in opposite sex relationships cannot be wholly ignored as implied by Plaintiffs. As shown in Rainey's Brief in Support of Summary Judgment, there is a long history and tradition of exclusively recognizing opposite sex marriages in Virginia. (Rainey Br. Supp. Mot. Summ. J. NEF Doc 38 at 1-15.)

Plaintiffs even admit that the Fourth Circuit has only applied rational basis review to laws prohibiting homosexual activities or conduct. (Pls. Br. Supp. Mot. Summ. J. NEF Doc. 26 at

16.) Plaintiff's assertion that this standard of law has been undermined by subsequent case law, is without merit. Subsequent cases, Including <u>Lawrence v. Texas</u> and <u>United States v. Windsor</u> have not mandated heightened or strict scrutiny.

## II.     Identification of the class.

In order to analyze Plaintiffs' Equal Protection claims, there must be the identification of a class subject to disparate treatment under the law. <u>Furnace v. Sullivan</u>, 705 F.3d 1021, 1030 (9th Cir. 2013) ("The first step in determining whether the officers violated Furnace's right to equal protection is to identify the relevant class to which he belonged. The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified"). Plaintiffs want to claim this class is based upon gender, i.e. sex, in order to obtain a heightened level of Constitutional scrutiny. However, this is not the prototypical case of sex discrimination. In other words, the Plaintiffs are not being treated differently because they are male or female. They are not being treated differently because men or women are somehow inferior or superior. A man is not prohibited from marrying another man because men have been historically discriminated against, because of any bias against men or due to a societal animus towards men. They are being treated differently because they are seeking to marry someone of the same sex. Plaintiffs want to say this is gender or sex based discrimination to obtain heightened scrutiny, and they want to argue they are being treated differently as same sex couples, a proposed new suspect class, because homosexuals have faced past discrimination. If Plaintiffs want the Court to consider their claims as discrimination against homosexual or same-sex couples, then that is the class that must be analyzed. As explained in Schaefer's Brief in Support of Summary Judgment, same sex couples are not a protected class, and Virginia's Marriage Laws should not be subject to strict or heightened scrutiny.

**III.    <u>Baker v. Nelson</u> remains binding case law.**

Subsequent appellate history does not undermine <u>Baker v. Nelson</u>. The right to marry, as was recognized prior to <u>Baker</u>, was the traditional right to marry which continues to exist today. <u>See e.g.</u> <u>Maynard v. Hill</u>, 125 U.S. 190 (1988) (characterizing marriage as "the most important relation in life.") <u>Baker</u> has been followed by several courts in recent years in similar cases. Many of the cases cited in Schaefer's and Rainey's respective summary judgment briefs which followed <u>Baker</u> were decided after cases like <u>Lawrence v. Texas</u>. Although they were not decided after <u>U.S. v. Windsor</u>, <u>Windsor</u> did not limit overrule the holding of <u>Baker</u>, even though the opportunity was presented. Moreover, the holdings in the cases relied upon heavily by Plaintiffs were extremely narrow. The following is a summary of the progression of some of the most high profile Supreme Court cases affecting the rights of marriage and homosexuals which Plaintiffs rely upon. None of these cases apply a heightened or strict scrutiny as requested by Plaintiffs. Moreover, the most recent cases have not overturned <u>Baker v. Nelson</u>.

    **A.    The limited holding of <u>Loving v. Virginia</u>.**

The seminal case of <u>Loving v. Virginia</u> dealt with the interracial marriage of a man and a woman in Washington, D.C., and upon their return to their home state of Virginia, the couple was prosecuted and sentenced for a criminal violation of Virginia's anti-miscegenation laws. <u>Loving v. Virginia</u>, 388 U.S. 1, 2-3 (1967). The Lovings were only able to avoid jail time by leaving the Commonwealth of Virginia. <u>Id.</u> At the time of the ruling in <u>Loving</u>, Virginia was one of only 15 states prohibiting interracial marriage, and the trend of the time had been for states to repeal prohibitions on and prosecutions for interracial marriage. <u>Id.</u> at 6-7. In short, the Court had allowed the majority of individual states to repeal bans on interracial marriage before stepping in to declare such laws unconstitutional after a long and protracted history of state

sponsored discrimination against non-whites. The Court was especially concerned with preventing racial discrimination in light of the clear purpose of the law being to promote white supremacy. Id. at 11-12.

The Loving case did not remove the states' ability to regulate marriage, and it did not create a fundamental right for a person to choose his or her bride or groom under all circumstances. The Court in Loving was only considering a prohibition on white persons marrying persons "of color." Additionally, the Loving Court was not confronted with a non-traditional concept of marriage like same sex marriage. In short, Loving did not create a fundamental right, suspect class or other characteristic which would place Virginia's Marriage Laws under anything more than rational basis review. Virginia's Marriage Laws were not created to promote heterosexual supremacy, and unlike the laws at issue in Loving, they do not provide for criminal penalties against the persons entering into or attempting to enter into a same sex marriage or civil union.

   **B.**  **The limited holding of <u>Lawrence v. Texas</u>.**

The Supreme Court's holding in Lawrence v. Texas did not create a fundamental right to same sex marriage or civil unions, and it did not impose any form of heightened scrutiny. Lawrence v. Texas, 539 U.S. 558 (2003). Rather, the Court in Lawrence found as unconstitutional Texas statutes imposing criminal penalties, as sex crimes, for acts of sodomy between consenting homosexual adults. Id. at 562. The statutes at issue sought "to control a personal relationship that, whether or not entitled to formal recognition in the law, is within the liberty interest of persons to choose without being punished as criminals." Id. at 567. This limited the Court's holding and recognized a state's right to decide for itself whether or not to recognize same sex relationships through the official acts of marriage or civil union. The ruling

in <u>Lawrence</u> only applied to a couple's "relationship in the confines of their homes and their own private lives." <u>Id.</u> In arriving at their ruling the Court recognized the trend among states was to repeal laws criminalizing sodomy (at the time of the ruling only 13 states still had such laws), and the states that did criminalize sodomy rarely enforced them. <u>Id.</u> at 573.

The <u>Lawrence</u> Court took great pain to note that its ruling did not involve specific categories of conduct including "public conduct . . . [and] whether the government must give formal recognition to any relationship that homosexual persons seek to enter." <u>Id.</u> at 578. Moreover, the concurring opinion of Justice O'Connor explicitly found the Court's ruling did not lead towards the conclusion that bans on same sex marriages would be found unconstitutional. Rather, she stated "other reasons exist to promote the institution of marriage beyond mere moral disapproval of an excluded group." <u>Id.</u> at 585 (O'Connor, J. concurring).

Unlike the laws at issue in <u>Lawrence</u>, Virginia's Marriage Laws do not criminalize homosexual conduct or relationships. Laws banning or failing to formally recognize same sex relationships still exist in the majority of states and there is no indication these laws are routinely unenforced. There is a trend of a few states repealing these laws, and if societal views toward same sex relationships have changed, other states, like Virginia will eventually follow suit. The states' legislative bodies will have to listen to the will of their electorate and change these laws. However, it is not for the courts to make such broad and sweeping changes to social policy until necessary to knock down the final few barriers as the Court did in <u>Lawrence</u>. Indeed, the <u>Lawrence</u> Court recognized that the lower appellate court had correctly upheld Texas' anti-sodomy law based upon <u>Bowers v. Hardwick</u>, 478 U.S. 186 (1986), which was the controlling law at the time. <u>Lawrence</u>, 388 U.S. at 567-68. In other words, the Court was required to specifically overturn <u>Bowers</u> in order to declare Texas' anti-sodomy laws unconstitutional.

Here, the Supreme Court will need to reverse and overrule its ruling in <u>Baker v. Nelson</u> before Virginia's Marriage Laws can be declared unconstitutional.

      **C.     The limited holding of <u>Windsor</u>.**

Finally, the Plaintiffs understandably rely heavily upon the recent decision of <u>U.S. v. Windsor</u>. However, as explained in Clerk Schaefer's Brief in Support of Summary Judgment, the ruling in <u>Windsor</u> is limited. That Court began its analysis by noting the relatively novel concept of same sex marriage:

> It seems fair to conclude that, until recent years, many citizens had not even considered the possibility that two persons of the same sex might aspire to occupy the same status and dignity as that of a man and woman in lawful marriage.

<u>Id.</u> at 2689. Although the Court struck down the Federal definition of marriage in the Defense of Marriage Act, it chose not to make a broad determination that same sex marriage was a fundamental right. The Court chose not to apply strict or heightened scrutiny. And, the Court chose not to overrule (or even address) <u>Baker v. Nelson</u>. Rather, the Court issued a narrow ruling based upon the notion of federalism. The <u>Windsor</u> case must be read against the backdrop of a Federal law definition of marriage, limited exclusively to same sex couples, when a handful of states have decided to formally recognize both same sex and opposite sex marriages. <u>Id.</u> at 2689. The Court made its ruling with the notion of federalism in mind because "[b]y history and tradition the definition and regulation of marriage . . . has been treated as being within the authority and realm of the separate States." <u>Id.</u> at 2689-90. The Court went on to justify its ruling by stating:

> The dynamics of state government in the federal system are to allow the formation of consensus respecting the way the members of a discrete community treat each other in their daily contact and constant interaction with each other
> . . .

> It reflects both the community's considered perspective on the historical roots of the institution of marriage and its evolving understanding of the meaning of equality.

Id. at 2692-93. In other words, the Court was recognizing the preferred method of changing a historical and deeply rooted understanding of an institution such as marriage is in the legislative bodies of each state as their constituents evolve and change their understanding, recognition and acceptance of homosexuals, rather than doing so by judicial decree. By striking down the limited Federal definition of marriage, the Court was respecting those states that chose to make such a change. However, the Court fell far short of extending any additional rights to same sex marriages for those persons living in states who have not yet made such a change. Rather, the Court went to great lengths to explain how and why the individual states have the authority in our federalist system to pass any number and manner of laws regulating marriage. In short, the Court was presented with the opportunity to overrule Baker v. Nelson, but it chose not to do so.

**IV.     A preliminary injunction is not warranted.**

Plaintiffs seek the alternative relief of a preliminary injunction pending a final outcome of this case on the merits. The Supreme Court recently clarified the elements and grounds necessary before a court may grant a preliminary injunction:

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

Winter v. NRDC, Inc., 129 S. Ct. 365, 374 (2008). Preliminary injunctions are an extraordinary remedy that should not routinely be granted:

> *The demanding . . . becomes even more exacting when a plaintiff seeks a preliminary injunction that mandates action, as contrasted with the typical form of preliminary injunction that merely preserves the status quo pending trial.* See East Tennessee Natural Gas Co. v. Sage, 361 F.3d 808, 828 (4th Cir. 2004) (quoting Wetzel v. Edwards, 635 F.2d 283, 286 (4th

Cir. 1980)) (noting that 'mandatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief'). As recently explained by the Fourth Circuit: Ordinarily, preliminary injunctions are issued to 'protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits.' In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 525 (4th Cir. 2003). Movant, however, seeks to alter the status quo by having a federal court order the Board to include his name on a primary election ballot. But such '[m]andatory preliminary injunctive relief in any circumstance is disfavored, and warranted only in the most extraordinary circumstances.' Id. (citation omitted). Consequently, our '*application of th[e] exacting standard of review [for preliminary injunctions] is even more searching when*' the relief requested "is mandatory rather than prohibitory in nature.' Id.; Perry v. Judd, No. 12-1067, 471 Fed. Appx. 219, 2012 U.S. App. LEXIS 980, 2012 WL 120076, at *4 (4th Cir. Jan 17, 2012) (unpublished).

Vollette v. Watson, 2012 U.S. Dist. LEXIS 103322, 9-10 (E.D. Va. July 24, 2012) (emphasis added).

Are Plaintiffs likely to succeed on the merits? Of course Plaintiffs claim they will be successful, but the likelihood of such success is not so clear. Indeed, in light of the Supreme Court's recent refusal in Windsor to issue a broad ruling declaring additional rights for same sex couples is telling. Additionally, as noted in both Schaefer's and Rainey's briefs in support of their respective motions for summary judgment, there is a plethora of recent case law continuing to uphold Baker v. Nelson, and until that case if overturned, it is unlikely Plaintiffs will be successful on the merits of their case.

Plaintiffs also make conclusory statements that they will be irreparably harmed without a preliminary injunction. Here, Plaintiffs allege they have lived together as homosexual couples for decades and taken steps necessary to ameliorate the effects of Virginia's Marriage Laws. It is difficult to conclude that Mr. Bostic and Mr. London will be irreparably injured if their preliminary injunction is denied. The harm they allege has already occurred. The current state

of the law does not recognize their marriage, and their financial as well as mental and emotional damage already exists. Moreover, the Plaintiffs are asking for mandatory injunctive relief, i.e. an instruction to Clerk Schaefer that he must ignore Virginia's Marriage Laws during the term of the preliminary injunction. As noted in <u>Vollette</u>, such mandatory injunctions are subject to additional scrutiny for an already extraordinary remedy. Additionally, granting the preliminary injunctive relief requested could itself cause Plaintiffs additional harm. For example, if the injunction were granted, Mr. London and Mr. Bostic (and presumably many others) were given a marriage license by Clerk Schaefer, and Plaintiffs were eventually unsuccessful on the merits, their marriage would then be invalidated, subjecting them to additional pain, sadness and dejection. Maintaining the status quo will prevent such additional harm to Plaintiffs and other same sex couples throughout Virginia.

Does the balance of the equities favor Plaintiffs, and is an injunction in the public interest? Plaintiffs make the argument it would be fair and equitable to protect their right to same sex marriage. However, it is also fair to consider the rights of the Commonwealth and the public at large. Granting a preliminary injunction could create an accounting and bookkeeping nightmare for both the state and federal governments. Any same sex marriages entered during the injunction period would have to be tracked in the event that Plaintiffs are unsuccessful. What would happen to the myriad of public and private benefits given to same sex couples if Virginia's Marriage Laws are eventually upheld? Would those couples have to pay back those benefits? It is certainly in the public's interest to have a final ruling on the issues raised by Plaintiffs, but it is not in the public interest to disrupt the status quo and create confusion while this case is processed through the judiciary.

**V.     Defendant Schaefer objects to the extent Plaintiffs seek judgment against him regarding laws other than Virginia's Marriage Laws.**

Plaintiff's prayer for relief makes a broad and vague reference indicating they are seeking a ruling that all laws (both statutes and case law) prohibiting or failing to recognize same sex marriages be declared unconstitutional. Defendant Schaefer objects to such a broad scope of inquiry for this lawsuit, at least to the extent it affects him as a party, as these unidentified statutes and cases may not pertain to or involve Schaefer and his official duties as the Clerk of the Norfolk Circuit Court. For example, to the extent Plaintiffs are challenging adoption laws, such claims do not pertain to Schaefer. Moreover, Bostic and London, the only Plaintiffs making allegations concerning Schaefer, have not alleged any injury regarding adoption laws. To the extent Plaintiffs have not sufficiently identified their claims in the Amended Complaint, they cannot add to those claims by raising additional arguments and/or claims via summary judgment. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss. To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, and simply by raising a point in a brief." Morgan Distrib. Co. Inc. v. Unidynamic Corp.. 868 F.2d 992, 995 (8th Cir.1989).

**Conclusion**

Same sex marriage has been prohibited by the Virginia Constitution and Virginia statute. Current Supreme Court jurisprudence upholds such prohibitions. Clerk Schaefer is duty bound to follow Virginia's Marriage Laws unless and until they are changed. The preferred method for such change is via the General Assembly. However, Clerk Schaefer will continue to abide by any change in the law whether it arrives through the legislative or judicial process. For the foregoing reasons, Defendant George E. Schaefer, III respectfully requests this Court deny Plaintiffs'

Motion for Summary Judgment and their alternative Motion for Preliminary Injunction and provide such further relief deemed necessary and just.

Respectfully submitted this 24[h] day of October, 2013.

GEORGE E. SCHAEFER, III, in his official capacity as Clerk of Court for Norfolk Circuit Court

By: _____/s/_____

David B. Oakley, Esq.
Virginia Bar Number 72226
Jeffrey F. Brooke, Esq.
Virginia Bar Number 28699
POOLE MAHONEY PC
860 Greenbrier Circle, Suite 401
Chesapeake, VA 23320
Phone: 757-962-6625
Fax: 757-962-6180
*Counsel for Defendant George E. Schaefer, III*
*in his official capacity as Clerk of Court for Norfolk Circuit Court*

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of October, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) to the following:

- **David Boies**
  dboies@bsfllp.com
- **Theodore J Boutrous , Jr**
  tboutrous@gibsondunn.com
- **Chantale Fiebig**
  cfiebig@gibsondunn.com
- **Earle Duncan Getchell , Jr**
  dgetchell@oag.state.va.us,mbrady@oag.state.va.us,wrussell@oag.state.va.us,KTaylor@oag.state.va.us
- **Jeremy Michael Goldman**
  jgoldman@bsfllp.com
- **Andrew Mitchell Hendrick**
  ahendrick@srgslaw.com
- **William Isaacson**
  wisaacson@bsfllp.com

- **Joshua Seth Lipshutz**
  jlipshutz@gibsondunn.com
- **Charles Barnet Lustig**
  clustig@srgslaw.com,mjones@srgslaw.com,dreidy@srgslaw.com
- **Matthew D McGill**
  mmcgill@gibsondunn.com
- **David Brandt Oakley**
  doakley@poolemahoney.com,cjones@poolemahoney.com
- **Theodore B Olson**
  tolson@gibsondunn.com
- **Erik C. Porcaro**
  eporcaro@srgslaw.com,efoster@srgslaw.com
- **Joshua I Schiller**
  jischiller@bsfllp.com
- **Thomas Brady Shuttleworth , II**
  tshuttleworth@srgslaw.com,pmerullo@srgslaw.com,pburford@srgslaw.com,cvaughan@srgslaw.com,clustig@srgslaw.com
- **Robert Brian Silver**
  rsilver@bsfllp.com
- **Amir C Tayrani**
  atayrani@gibsondunn.com

And I hereby certify that I will mail the document by U.S. Mail to the following non-filing user at his last known address:

Robert E. Ruloff, Esq., VSB # 13471
Shuttleworth, Ruloff, Swain,
Haddad & Morecock, P.C.
4525 South Blvd., Ste. 300
Virginia Beach, VA 23452

By: /s/
David B. Oakley, Esq.
Virginia Bar Number 72226
Jeffrey F. Brooke, Esq.
Virginia Bar Number 28699
POOLE MAHONEY PC
860 Greenbrier Circle, Suite 401
Chesapeake, VA 23320
Phone: 757-962-6625
Fax: 757-962-6180
Email: doakley@poolemahoney.com