UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| TIMOTHY B. BOSTIC, *et al*.<br><br>                    Plaintiffs,<br><br>v.<br><br>JANET M. RAINEY, *et al*.<br><br>                    Defendants. | Case No.: 2:13cv395 |

**THE FAMILY FOUNDATION OF VIRGINIA'S AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTEREST OF AMICUS ....................................................................................................... 1

ARGUMENT ........................................................................................................................... 1

I.   This Court Should Not Create "A Federal Intrusion on State Power" and "Disrupt the Federal Balance" by Reading Into the Constitution a Mandate to Redefine Marriage. ........................................................................................................................ 1

II.  Protecting Federalism is a Compelling Interest that Justifies Non-Interference by the Federal Courts with the State's Sovereign Authority to Regulate Marriages. ............... 4

     A.   Federalism Promotes the Self-Determination of the Citizens of the States. ............ 5

     B.   Federalism Promotes Interstate Pluralism with Its Associated Benefits. ................ 7

CONCLUSION ....................................................................................................................... 9

**TABLE OF AUTHORITIES**

*Cases:*

*Bond v. United States*,
    131 S. Ct. 2355 (2011)..................................................................................................4

*Chandler v. Florida*,
    449 U.S. 560 (1981)......................................................................................................8

*District Attorney's Office for the Third Judicial District v. Osborne*,
    557 U.S. 52 (2009).......................................................................................................2

*Elk Grove Unified School District v. Newdow*,
    542 U.S. 1 (2004).........................................................................................................2

*Erie R. Co. v. Tompkins*,
    304 U.S. 64 (1938).......................................................................................................5

*Gregory v. Ashcroft*,
    501 U.S. 452 (1991).................................................................................................1, 5

*In re Winship*,
    397 U.S. 358 (1970).....................................................................................................5

*Loving v. Virginia*,
    388 U.S. 1 (1967).........................................................................................................4

*Miller v. California*,
    413 U.S. 15 (1973).......................................................................................................9

*National Federation of Independent Business v. Sebelius*,
    132 S. Ct. 2566 (2012)..................................................................................................2

*New State Ice Co. v. Liebmann*,
    285 U.S. 262 (1932).....................................................................................................7

*Oregon v. Ice*,
    555 U.S. 160 (2009).................................................................................................7, 8

*San Antonio School District v. Rodriguez*,
    411 U.S. 1 (1973).........................................................................................................7

*Shelby Co. v. Holder*,
    133 S. Ct. 2612 (2013)..................................................................................................4

*Turner v. Safley*,
    482 U.S. 78 (1987).......................................................................................................4

*U.S. Term Limits, Inc. v. Thornton*,
    514 U.S. 779 (1995)..................................................................................................4

*United States v. Comstock*,
    560 U.S. 126, 130 S. Ct. 1949 (2010).......................................................................2

*United States v. Lopez*,
    514 U.S. 549 (1995)...............................................................................................6, 7

*United States v. Windsor*,
    133 S. Ct. 2675 (2013).......................................................................................3, 4, 6

*Zablocki v. Redhail*,
    434 U.S. 374 (1978)..................................................................................................4

### *Constitutional Provisions:*

Virginia Constitution Article 1, section 15-A...................................................................1

### *Other Authorities:*

*James Wilson Replies to Findley, Dec. 1, 1787*, *in* 1 THE DEBATE ON THE CONSTITUTION
(Bernard Bailyn ed., 1993)................................................................................................2

THE FEDERALIST NO. 45 (George W. Carey & James McClellan eds., 2001)................2

John O. McGinnis, *Reviving Tocqueville's America: The Rehnquist Court's
Jurisprudence of Social Discovery*, 90 Cal. L. Rev. 485 (2002) .......................................8

JAMES MCLELLAN, LIBERTY, ORDER, AND JUSTICE (3d ed. 2000)....................................8

ROBERT F. NAGEL, THE IMPLOSION OF AMERICAN FEDERALISM (2001).........................4

Jeffrey L. Rensberger, *Interstate Pluralism: The Role of Federalism in the Same-Sex
Marriage Debate,* 2008 BYU L. Rev. 1703 ...............................................................7, 8

## INTEREST OF AMICUS

Amicus Curiae The Family Foundation of Virginia is a non-partisan, non-profit organization that exists to strengthen families in Virginia through citizen advocacy and education. Amicus Curiae focuses its efforts on public-policy issues involving the family, children, marriage, and constitutional government. The Family Foundation of Virginia was one of the primary policy advocates in support of the Commonwealth's marriage amendment, which was approved by the voters at the general election on November 7, 2006, and which states:

> That only a union between one man and one woman may be a marriage valid in or recognized by this Commonwealth and its political subdivisions.
>
> This Commonwealth and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance, or effects of marriage. Nor shall this Commonwealth or its political subdivisions create or recognize another union, partnership, or other legal status to which is assigned the rights, benefits, obligations, qualities, or effects of marriage.

Virginia Constitution Article 1, section 15-A.

This case questions the constitutionality of Virginia's sovereign decision to preserve marriage as the union between one man and one woman. As a citizen advocacy organization, Amicus Curiae's interest in this case derives directly from the Commonwealth's electorate, which enacted the marriage amendment into law, and from the important public-policy issues implicated by that legal enactment.

## ARGUMENT

I.  **This Court Should Not Create "A Federal Intrusion on State Power" and "Disrupt the Federal Balance" by Reading Into the Constitution a Mandate to Redefine Marriage.**

As the U.S. Supreme Court has explained, "our Constitution establishes a system of dual sovereignty between the States and the Federal Government." *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991). The constitutional system of federalism rests on two conceptual pillars. First is that

1

the powers of the national government are "delegated" rather than inherent powers. Second is that the powers of the States are "reserved" powers. As James Madison explained: "The powers delegated by the proposed constitution to the federal government, are few and defined. Those which are to remain in the state governments, are numerous and indefinite." THE FEDERALIST No. 45, at 241 (George W. Carey & James McClellan eds., 2001). This system is founded on the understanding that "the people are the source of authority [and] the consequence is, that they . . . can distribute one portion of power, to the more contracted circle, called state governments: they can also furnish another proportion to the government of the United States." *James Wilson Replies to Findley, Dec. 1, 1787, in* 1 DEBATES ON THE CONSTITUTION 820 (Bernard Bailyn ed., 1993). "In our federal system, the National Government possesses only limited powers; the States and the people retain the remainder." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2577 (2012).

Under our federal system, "the powers reserved to the States consist of the whole, undefined residuum of power remaining after taking account of powers granted to the National Government." *United States v. Comstock*, 560 U.S. 126, 130 S. Ct. 1949, 1967 (2010) (Kennedy, J., concurring).

For this court to rule that the United States Constitution mandates that the State redefine marriage would unnecessarily federalize a question that is undoubtedly within the "residuum" of power reserved to the states. As the Supreme Court has noted: "One of the principal areas in which this Court has customarily declined to intervene is the real of domestic relations." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004). To intervene in state regulation of marriage would "thrust the Federal Judiciary into an area previously left to state courts and legislatures." *Dist. Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 73 n.4

2

(2009). It would create "a federal intrusion on state power" and "disrupt[] the federal balance." *United States v. Windsor*, 133 S. Ct. 2675, 2692 (2013). All without any clear textual or precedential direction to do so.

As the Supreme Court forcefully reiterated last term: "By history and tradition the definition and regulation of marriage . . . has been treated as being within the authority and realm of the separate States." *Id*. at 2689-2690. The Court noted "[t]he recognition of civil marriages is central to state domestic relations law applicable to its residents and citizens." *Id*. at 2691. Further, "[t]he definition of marriage is the foundation of the State's broader authority to regulate the subject of domestic relations with respect to the '[p]rotection of offspring, property interests, and the enforcement of marital responsibilities.'" *Id*.

It has been so since the beginning: "The significance of state responsibilities for the definition and regulation of marriage dates to the Nation's beginning; for 'when the Constitution was adopted the common understanding was that the domestic relations of husband and wife and parent and child were matters reserved to the States.'" *Id*. at 2680-2681 (quoting *Ohio ex rel. Popovici v. Agler*, 280 U. S. 379, 383-384 (1930)). The Court explained that, "'the states, at the time of the adoption of the Constitution, possessed full power over the subject of marriage and divorce . . . [and] the Constitution delegated no authority to the Government of the United States on the subject of marriage and divorce.'" *Id*. at 2691 (quoting *Haddock* v. *Haddock*, 201 U. S. 562, 575 (1906)).

"Consistent with this allocation of authority, the Federal Government, through our history, has deferred to state-law policy decisions with respect to domestic relations." *Id*. Thus, it is a "long-established precept that the incidents, benefits, and obligations of marriage are

3

uniform for all married couples within each State, though they may vary, subject to constitutional guarantees,[1] from one State to the next." *Id*. at 2692.

There is no reason for this court to depart from this "long established precept" by holding that the federal courts now have the authority to superintend the domestic relations laws of the states.

**II.     Protecting Federalism is a Compelling Interest that Justifies Non-Interference by the Federal Courts with the State's Sovereign Authority to Regulate Marriages.**

Our federal system is premised on the "counterintuitive insight, that 'freedom is enhanced by the creation of two governments, not one.'" *Bond v. United States*, 131 S. Ct. 2355, 2364 (2011) (quoting *Alden v. Maine*, 527 U.S. 706, 758 (1999)). As Justice Kennedy has noted, "[t]he Framers split the atom of sovereignty," *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 838 (1995) (Kennedy, J., concurring), and "concluded that allocation of powers between the National Government and the States enhances freedom, first by protecting the integrity of the governments themselves, and second by protecting the people, from whom all governmental powers are derived." *Bond*, 131 S. Ct. at 2364.

Federalism "'preserves the integrity, dignity and residual sovereignty of the States,'" and "secures to citizens the liberties that derive from the diffusion of sovereign power." *Shelby Co. v. Holder*, 133 S. Ct. 2612, 2623 (2013). This is important because "[w]ithout some degree of sovereign status, states would not have the capacity to act as a 'counterpoise' to federal power." ROBERT F. NAGEL, THE IMPLOSION OF AMERICAN FEDERALISM 32 (2001). That is why the federal

---

[1] The constitutional guarantees referenced are not applicable here since all of the cases that have constrained the state's regulation of marriage have involved laws that prevented individuals otherwise qualified for marriage from marrying, and have not gone to the essentials of what marriage means as the claim in this case does. *See Loving v. Virginia*, 388 U.S. 1 (1967); *Zablocki v. Redhail*, 434 U.S. 374 (1978); *Turner v. Safley*, 482 U.S. 78 (1987).

4

structure "recognizes and preserves the autonomy and independence of the states." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 75 (1938). As the Court has explained:

> Supervision over either the legislative or the judicial action of the states is in no case permissible except as to matters by the constitution *specifically authorized or delegated* to the United States. Any interference with either, except as thus permitted, is an invasion of the authority of the state and, to that extent, a denial of its independence.

*Id.* at 79 (quoting *Baltimore & O.R. Co. v. Baugh*, 149 U.S. 368, 401 (1893) (Field, J., dissenting)) (emphasis added).

This diffusion of powers ensures that citizens may control their own destiny and that different states may adopt different policies uniquely suited to the desires and aspirations of the people of those states. As the Supreme Court noted:

> This federalist structure of joint sovereigns preserves to the people numerous advantages. It assures a decentralized government that will be more sensitive to the diverse needs of a heterogenous society; it increases opportunity for citizen involvement in democratic processes; it allows for more innovation and experimentation in government; and it makes government more responsive by putting the States in competition for a mobile citizenry.

*Gregory*, 501 U.S. at 458.

### A. Federalism Promotes the Self-Determination of the Citizens of the States.

This interest in "increase[d] opportunity for citizen involvement in democratic processes" is particularly important in a case such as this in which the court is asked to second-guess a decision arrived at through a process which involved the citizens in their direct and representative capacities. As Justice Black said, "the right of self-government that our Constitution preserves is just as important as any of the specific individual freedoms preserved in the Bill of Rights." *In re Winship*, 397 U.S. 358, 385 (1970) (Black, J., dissenting). As Justice Kennedy explains, the federalist "theory that two governments accord more liberty than one requires for its realization two distinct and discernible lines of political accountability: one

5

between the citizens and the Federal Government; the second between the citizens and the States." *United States v. Lopez*, 514 U.S. 549, 576 (1995) (Kennedy, J., concurring). He continued:

> Were the Federal Government to take over the regulation of entire areas of traditional state concern, areas having nothing to do with the regulation of commercial activities, the boundaries between the spheres of federal and state authority would blur and political responsibility would become illusory. The resultant inability to hold either branch of the government answerable to the citizens is more dangerous even than devolving too much authority to the remote central power.

*Id*. at 577 (citations omitted).

The Supreme Court's recent decision striking down the federal Defense of Marriage Act, which the Court said "departs from this history and tradition of reliance on state law to define marriage," stresses the important value of political self-determination. *Windsor*, 133 S. Ct. at 2692. In that case, the Court spoke of the New York legislature's decision in terms that stressed the importance of citizen involvement: "After a statewide deliberative process that enabled its citizens to discuss and weigh arguments for and against same-sex marriage, New York acted to enlarge the definition of marriage." *Id*. at 2689. The Court said the decision "reflects . . . the community's considered perspective" (*id*. at 2692-2693) and that "New York was responding 'to the initiative of those who [sought] a voice in shaping the destiny of their own times.'" *Id*. at 2692 (quoting *Bond* v. *United States*, 131 S. Ct. 2355, 2359 (2011). The majority could not have been clearer when it said: "The dynamics of state government in the federal system are to allow the formation of consensus respecting the way the members of a discrete community treat each other in their daily contact and constant interaction with each other." *Id*. Clearly, state decisions reflecting the consensus of citizens about a matter as fundamental as the definition of marriage—

6

the foundation of the family which is, in turn, the most basic unit of society—ought to be entitled to a high degree of respect.

### B. Federalism Promotes Interstate Pluralism with Its Associated Benefits.

Beyond the importance of safeguarding local self-government, federalism also advances interstate pluralism. "Interstate pluralism is the feature of our federal system that reflects the ability of each state to establish itself as a distinct community. It entails the ability to make and enforce choices on foundational matters such as fundamental ordering of . . . family relations" and "seeks to protect each state's ability to create and enforce these fundamental orderings and thereby define its society." Jeffrey L. Rensberger, *Interstate Pluralism: The Role of Federalism in the Same-Sex Marriage Debate,* 2008 BYU L. REV. 1703, 1722-23.

Interstate pluralism allows states to experiment with various social and legal policies free from interference and to reflect the unique preference and attributes of the state.

As the U.S. Supreme Court has "long recognized," the States have an important role "as laboratories for devising solutions to difficult legal problems." *Oregon v. Ice*, 555 U.S. 160, 171 (2009). For instance, Justice Brandeis argued: "It is one of the happy incidents of the federal system that a single courageous state may, if its citizens choose, serve as a laboratory; and try novel social and economic experiments without risk to the rest of the country." *New State Ice Co. v. Liebmann*, 285 U.S. 262, 311 (1932) (Brandeis, J., dissenting). Justice Kennedy explained "the theory and utility of our federalism are revealed" when "States may perform their role as laboratories for experimentation to devise various solutions where the best solution is far from clear." *Lopez*, 514 U.S. at 581.

"Pluralism also affords some opportunity for experimentation, innovation, and a healthy competition." *San Antonio Sch. Dist. v. Rodriguez*, 411 U.S. 1, 50 (1973). It is common in many

7

areas of the law for particular States to be viewed favorably by residents of other States because of the State's approach to a variety of legal issues such as taxation and business regulations as well as domestic relations. Since "interstate pluralism allows for state-to-state differentiation, it encourages individuals to relocate to take advantage of a particular social policy, be it low taxes, high employment, a high level of social services, or personal safety." Rensberger, *supra*, at 1739.

The Supreme Court has said it "should not diminish that [experimentation] role absent impelling reason to do so." *Oregon*, 555 U.S. at 171. This is in keeping with an earlier statement: "We are not empowered by the Constitution to oversee or harness state procedural experimentation; only when the state action infringes fundamental guarantees are we authorized to intervene." *Chandler v. Florida*, 449 U.S. 560, 582 (1981).

Additionally, as Professor James McLellan notes, "federalism protects minority rights—the rights of communities or whole regions to maintain their customs, their diversity and individuality, their self-rule." JAMES MCLELLAN, LIBERTY, ORDER, AND JUSTICE 316 (3d ed. 2000). Federalism protects the "different preferences and needs" of different States. John O. McGinnis, *Reviving Tocqueville's America: The Rehnquist Court's Jurisprudence of Social Discovery*, 90 CAL. L. REV. 485, 510 (2002). Professor Rensberger explains that it is an empirical fact that "in culture, conditions, and social values, the states are fundamentally different from one another." Rensberger, *supra*, at 1792. There is no reason these differences may not appropriately be reflected in State laws.

In the context of obscenity regulation "the [Supreme] Court explicitly allowed for diversity within the United States of what is obscene." *Id*. at 1732. In the case referred to, the Court said "our Nation is simply too big and too diverse for this Court to reasonably expect that such standards could be articulated for all 50 States in a single formulation, even assuming the

8

prerequisite consensus exists." *Miller v. California*, 413 U.S. 15, 30 (1973). The Court also said: "People in different States vary in their tastes and attitudes, and this diversity is not to be strangled by the absolutism of imposed uniformity." *Id*. at 33.

Obviously, strangling the diversity of state marriage policies with uniformity imposed by the federal courts is an even more substantial threat to the values advanced by federalism.

## CONCLUSION

For the foregoing reasons, Amicus Curiae respectfully requests that this Court grant Defendants' motions for summary judgment.

Dated: October 28, 2013

                                                         Respectfully submitted,

                                                         /s/ Mark R. Matney
                                                          Mark R. Matney, Va. Bar No. 34950
                                                          Matney Law, PLLC
                                                          13195 Warwick Blvd., Suite 2A
                                                          Newport News, VA 23602
                                                          Tel: (757) 969-5197
                                                          Fax: (757) 969-5988
                                                          matneylaw@gmail.com

                                                          George T. Dillon III, Va. Bar No. 73840
                                                          *Attorney for Proposed Amicus Curiae*
                                                          *The Family Foundation of Virginia*
                                                          Dillon Law Group, PLC
                                                          2809 South Lynnhaven Road, Ste. 160
                                                          Virginia Beach, VA 23452
                                                          Tel: (757) 422-4747
                                                          Fax: (757) 422-8994
                                                          gdillon@dillonlawgrp.com

                                                          *Attorneys for Amicus Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of October, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

David B. Oakley
doakley@poolemahoney.com
Jeffrey F. Brooke, Esq.
Poole Mahoney PC
860 Greenbrier Circle, Suite 401
Chesapeake, VA 23320

*Attorneys for Defendant George E. Schaefer, III*

Thomas B. Shuttleworth
tshuttleworth@srgslaw.com
Robert E. Ruloff
rruloff@srgslaw.com
Charles B. Lustig
clustig@srgslaw.com
Andrew Mitchell Hendrick
ahendrick@srgslaw.com
Erik C. Porcaro
eporcaro@srgslaw.com
Shuttleworth, Ruloff, Swain, Haddad & Morecock, P.C.
4525 South Blvd., Suite 300
Virginia Beach, VA 23452

Joshua Seth Lipshutz
jlipshutz@gibsondunn.com
Gibson, Dunn & Crutcher LLP
555 Mission St., Suite 3000
San Francisco, CA 94105-0921

Robert Brian Silver
rsilver@bsfllp.com
Joshua I. Schiller
jischiller@bsfllp.com
Boies, Schiller & Flexner LLP
575 Lexington Ave., 7th Floor
New York, NY 10022

Earle Duncan Getchell, Jr.
dgetchell@oag.state.va.us
Office of the Attorney General
900 E Main St
Richmond, VA 23219
dgetchell@oag.state.va.us

*Attorney for Defendant Janet M. Rainey*

Chantale Fiebig
cfiebig@gibsondunn.com
Amir C Tayrani
atayrani@gibsondunn.com
Theodore B Olson
tolson@gibsondunn.com
Matthew D McGill
mmcgill@gibsondunn.com
Gibson Dunn & Crutcher LLP
1050 Connecticut Ave, NW
Washington, DC 20036-5306

David Boies
dboies@bsfllp.com
Boies, Schiller & Flexner, LLP
333 Main St.
Armonk, NY 10504

Jeremy Michael Goldman
jgoldman@bsfllp.com
Boies, Schiller & Flexner LLP
1999 Harrison St., Suite 900
Oakland, CA 94612

10

Theodore J Boutrous, Jr
tboutrous@gibsondunn.com
Gibson, Dunn & Crutcher LLP (CANA)
333 South Grand Ave.
Los Angeles, CA 90071-3197

William Isaacson
wisaacson@bsfllp.com
Boies, Schiller & Flexner
5301 Wisconsin Ave, NW
Washington, DC 20015

*Attorneys for Plaintiffs*

/s/ Mark R. Matney
Mark R. Matney, Va. Bar No. 34950
Matney Law, PLLC
13195 Warwick Blvd., Suite 2A
Newport News, VA 23602
Tel: (757) 969-5197
Fax: (757) 969-5988
matneylaw@gmail.com