# UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF VIRGINIA—NORFOLK DIVISION

TIMOTHY B. BOSTIC,

TONY C. LONDON,

CAROL SCHALL, and

MARY TOWNLEY,

        Plaintiffs,

v.                                                  CASE NO. 2:13-cv-395

JANET M. RAINEY, in her official
capacity as State Registrar of Vital Records, and

GEORGE E. SCHAEFER, III, in his official
capacity as the Clerk of Court
for Norfolk Circuit Court,

Defendants.

**REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PRELIMINARY INJUNCTION**

## INTRODUCTION

Defendants accuse Plaintiffs of trying to "redefine[ ]" marriage. Rainey Opp. at 11. But it is Defendants who have imagined a peculiar and cramped definition of marriage as a "contract[ ] by the young and presumptively fertile," which "acts to socialize those persons in a way that contributes to responsible procreation and optimal childrearing." *Id*. at 16. Defendants seem to have no understanding of the privacy, liberty, and associational values that underlie marriage as a personal, fundamental right. *See, e.g., Loving v. Virginia*, 388 U.S. 1, 12 (1967). Under Defendants' litigation-inspired concept of marriage, same-sex couples have no need to be married and no cause to complain that they are excluded from the "most important relation in life." *Zablocki v. Redhail*, 434 U.S. 374, 384 (1978). Indeed, Defendants go so far as to contend that "the burden imposed on Plaintiffs by Virginia's Marriage Laws is not substantial" because marriage can be replicated through "proper estate planning, contracts, [and] advanced medical directives." Schaefer Opp. at 5. Defendants even "den[y]" that Plaintiffs have suffered pain and stigma as a result of Virginia's Marriage Prohibition. Rainey Opp. at 5 (¶ 72); *see also* Schaefer Opp. at 13 ("It is difficult to conclude that [Plaintiffs] will be irreparably injured" if they are unable to marry.). The Supreme Court rejected similar arguments from the Commonwealth in *Loving* and this Court should reject those discredited contentions here.

Defendants' dismissal of Plaintiffs' injuries reflects their "failure to appreciate the extent of the liberty at stake." *Lawrence v. Texas*, 539 U.S. 558, 567 (2003). Plaintiffs seek access to a vital and "sacred" institution, *Griswold v. Connecticut*, 381 U.S. 479, 486 (1965), that the Supreme Court repeatedly has recognized as far more important than a mere bundle of contractual rights. Defendants offer no reason whatsoever to exclude gay men and lesbians from marriage and deprive their relationships of the respect, "dignity," and social acceptance that heterosexual marriages enjoy. *United States v. Windsor*, 133 S. Ct. 2675, 2694 (2013). And

1

they offer no reason whatsoever for humiliating and stigmatizing the children of same-sex couples—including E. S.-T., the daughter of Plaintiffs Schall and Townley—by treating their families as different and inferior. This Court should declare Virginia's Marriage Prohibition unconstitutional and enter summary judgment for Plaintiffs.

## ARGUMENT

**I.** *Baker v. Nelson* **Does Not Control This Case.**

Defendants argue that Plaintiffs' due process and equal protection claims are foreclosed by the Supreme Court's summary disposition in *Baker v. Nelson*, 409 U.S. 810 (1972), despite the "manifold changes to the Supreme Court's . . . jurisprudence" in the forty years since *Baker* was decided. *Windsor v. United States*, 699 F.3d 169, 178–79 (2d Cir. 2012). Defendants cite *State Oil Co. v. Khan*, 522 U.S. 3 (1997), for the proposition that only the Supreme Court can determine that one of its prior holdings is no longer good law. Rainey Opp. at 8. But that principle is wholly inapplicable to the Supreme Court's summary dismissals, which the Court has made clear are binding on lower courts *only* to the extent that they have not been undermined by subsequent "doctrinal developments" in the Court's jurisprudence, *Hicks v. Miranda*, 422 U.S. 332, 344 (1975), and *only* "on the precise issues presented and necessarily decided" by the Court, *Mandel v. Bradley*, 432 U.S. 173, 176 (1977).

Under that approach, Defendant Rainey herself acknowledges that *Baker* has been fatally undermined by the Supreme Court's subsequent decisions in *Romer v. Evans*, 517 U.S. 620 (1996), and *Windsor*. As Rainey explains, *Baker* does not preclude claims under what she calls the "*Romer-Windsor* animus theory." Rainey Opp. at 9. She argues instead that Plaintiffs' claims under *Windsor* and *Romer* "fail *on this record*." *Id.* (emphasis added).

Defendant Rainey is correct that *Romer* and *Windsor* mean that *Baker* is not controlling and that this Court accordingly must decide this case on its own merits. But Defendant Rainey is

2

incorrect in her suggestion that *Romer* and *Windsor* announced a novel "animus theory." Those decisions simply held that the laws at issue in those cases violated settled due process and equal protection principles. In *Windsor*, the Court struck down Section 3 of the Defense of Marriage Act ("DOMA") because the law "interfere[d] with the equal dignity of same-sex marriages." 133 S. Ct. at 2693; *see also Turner v. Safley*, 482 U.S. 78, 95 (1987); *Zablocki*, 434 U.S. at 384. And in *Romer*, the Court invalidated on equal protection grounds a measure that targeted gay men and lesbians for discriminatory treatment. *See* 517 U.S. at 631–32. Plaintiffs in this case challenge Virginia's Marriage Prohibition under the same constitutional provisions—the Due Process and Equal Protection Clauses—and assert the same constitutional rights to marriage and to equal treatment under the law. Thus, *Baker* is no obstacle to deciding the substantial questions posed by this case.

II.   **Excluding Gay Men And Lesbians From Marriage Is Unconstitutional.**

Defendants suggest that the issue in this case is whether the institution of marriage should exist *at all*, urging this Court not to "declare . . . marriage unconstitutional." Rainey Opp. at 17. But this case is not about abolishing or diminishing marriage. The central question in this case is whether the Commonwealth can *exclude* gay men and lesbians from the institution of marriage. Defendants have still not set forth *any* justification for treating gay men and lesbians as "unequal to everyone else," *Romer*, 517 U.S. at 635, by depriving them of this fundamental civil right—and have not identified a *single* harm that the Commonwealth or any Virginia citizen would suffer as a result of allowing gay men and lesbians to marry. Thus, Virginia's Marriage Prohibition cannot withstand *any* level of scrutiny.

A.   **Virginia's Marriage Prohibition Cannot Withstand Heightened Scrutiny.**

Defendants argue that this Court should uphold Virginia's Marriage Prohibition under rational basis review. But Virginia's Marriage Prohibition is subject to heightened scrutiny for

3

three reasons: (1) it prevents gay men and lesbians from exercising their fundamental right to marry, *see Carey v. Population Servs., Int'l*, 431 U.S. 678, 686 (1977); *Harper v. Va. Bd. of Elections*, 383 U.S. 663, 670 (1966); *Waters v. Gaston Cnty.*, 57 F.3d 422, 426 (4th Cir. 1995); (2) it discriminates against Plaintiffs on the basis of their sex, *see United States v. Virginia*, 518 U.S. 515, 533 (1996); and (3) it discriminates against Plaintiffs on the basis of their sexual orientation, *Windsor*, 699 F.3d at 185; *Massachusetts v. U.S. Dep't of Health & Human Servs. ("Gill")*, 682 F.3d 1, 11 (1st Cir. 2012).

<u>Fundamental Right To Marry</u>. There is only one fundamental "right to marry." It is a liberty of association that fosters "a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred." *Griswold*, 381 U.S. at 486. It is safeguarded by the Constitution not to promote "causes," "political faiths," or "social projects," but instead a "way of life," "a harmony in living," and "a bilateral loyalty." *Id.* It is a right so central to liberty that, upon emancipation, "former slaves viewed their ability to marry as one of the most important new rights they had gained." *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 957 (N.D. Cal. 2010). And it is a right to which everyone—including gay men and lesbians—is entitled.

Defendants argue that "Virginia's Marriage Laws do not affect the fundamental right to marriage as it is traditionally defined." Schaefer Opp. at 5. But the historical exclusion of certain groups from a fundamental right does not mean that the right incorporates those exclusions, as Virginia's own history reflects: When African Americans were finally permitted to marry, and when the Supreme Court "invalidated race restrictions in *Loving*, the definition of the right to marry did not change." *Perry*, 704 F. Supp. 2d at 992 (citing *Loving*, 388 U.S. at 12). Rather, in *Loving*, "the Court recognized that race restrictions, despite their historical prevalence, stood in stark contrast to the concepts of liberty and choice inherent in the right to marry." *Id.*

4

Sex Discrimination. Defendants argue that Virginia's Marriage Prohibition does not constitute sex discrimination because "Plaintiffs are not being treated differently because they are male or female." Schaefer Opp. at 7. But there can be no question that Plaintiffs Bostic and London would be permitted to marry if one of them were a woman, or that the marriage of Plaintiffs Schall and Townley would be recognized in Virginia if one of them were a man. Defendant Rainey points out that these gender-based limitations "apply equally to both sexes." Rainey Opp. at 13. But the anti-miscegenation law at issue in *Loving* was not saved from constitutional infirmity merely because it "appl[ied] equally" to people of all races. *See Loving*, 388 U.S. at 8 ("[W]e reject the notion that the mere 'equal application' of a statute containing racial classifications is enough to remove the classifications from the Fourteenth Amendment's proscription of all invidious racial discriminations[.]"); *see also Lawrence*, 539 U.S. at 584–85 (O'Connor, J., concurring). In fact, Virginia's Marriage Prohibition is driven by a misguided effort to preserve traditional gender roles in society—prototypical sex discrimination that requires heightened scrutiny. *See Virginia*, 518 U.S. at 533–34; *Craig v. Boren*, 429 U.S. 190, 197 (1976).

Sexual-Orientation Discrimination. Defendants argue that discrimination based on sexual orientation does not require heightened scrutiny, citing *Thomasson v. Perry*, 80 F.3d 915 (4th Cir. 1996). But *Thomasson*, which concerned the "specialized society" of the military, *id.* at 928, is of limited relevance here. Further, in light of *Lawrence* and *Windsor*, the Fourth Circuit's decision in *Thomasson* "should no longer be followed." *Faust v. S.C. State Highway Dep't*, 721 F.2d 934, 936 (4th Cir. 1983); *see also MacDonald v. Moose*, 710 F.3d 154, 163 (4th Cir. 2013).

Remarkably, Defendants also contend that there is no evidence of "a history of widespread discrimination against homosexuals." Schaefer Opp. at 5. But the long and painful

5

history of discrimination against gay men and lesbians in the United States (and in Virginia) cannot seriously be disputed, particularly because Virginia's own anti-sodomy statute, which "demean[ed homosexuals'] existence [and] control[led] their destiny by making their private sexual conduct a crime," *Lawrence*, 539 U.S. at 578, remained in effect until just months ago. *See* R. 26-13: Lustig Decl. Ex. H (*Ken Cuccinelli Loses Petition to Uphold Sodomy Law*, Huffington Post, Apr. 10, 2013); *McDonald*, 710 F.3d at 163 (declaring Virginia's sodomy statute facially unconstitutional ten years after *Lawrence*); *see also Windsor*, 699 F.3d at 182 ("It is easy to conclude that homosexuals have suffered a history of discrimination."); *Kerrigan v. Comm'r of Pub. Health*, 957 A.2d 407, 432 (Conn. 2008) ("gay persons historically have been, and continue to be, the target of purposeful and pernicious discrimination due solely to their sexual orientation"). And Defendants do not otherwise dispute that gay men and lesbians satisfy the other criteria employed by the Supreme Court to determine whether classifications warrant heightened scrutiny: ability to contribute to society, immutability, or relative political powerlessness. *See Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 313 (1976).[1]

<u>Application Of Heightened Scrutiny</u>. Defendants assert only one reason why they believe Virginia's Marriage Prohibition would survive heightened scrutiny: "*Windsor* makes clear that the power of each State to adopt a uniform definition of marriage within its boundaries

---

[1] Defendant Rainey demeans the sexual orientation of gay men and lesbians as an "affinity," Rainey Opp. at 12, but she does not suggest that it can or should be changed. Rightly so, for federal courts now reject the notion that homosexuality is merely a behavioral predilection as opposed to a fundamental aspect of one's identity. *See, e.g., Hernandez-Montiel v. INS*, 225 F.3d 1084, 1093 (9th Cir. 2000) ("Homosexuality is as deeply ingrained as heterosexuality."); *Windsor*, 699 F.3d at 184–85; *Gill*, 682 F.3d at 14–15; *see also Christian Legal Soc'y v. Martinez*, 130 S. Ct. 2971, 2990 (2010) ("[o]ur decisions have declined to distinguish between [homosexual] status and conduct"). *Cf. Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993) (Alito, J.) (defining an "immutable characteristic" as one that "the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences") (internal quotation marks omitted).

. . . is an important governmental interest." Rainey Opp. at 13 (citing *Windsor*, 133 S. Ct. at 2692). But this reliance on *Windsor* is misplaced. Although *Windsor* recognized that "the incidents, benefits, and obligations of marriage are [often] uniform for all married couples within each State," the Court also recognized that "[t]he States' interest in defining and regulating the marital relation [is] subject to constitutional guarantees." 133 S. Ct. at 2692; *see also id.* at 2691 ("State laws defining and regulating marriage, of course, must respect the constitutional rights of persons[.]") (citing *Loving*, 388 U.S. at 7). In any event, Defendants do not set forth any *compelling* governmental interest in denying gay men and lesbians the fundamental right to marry, and they do not assert that Virginia's Marriage Prohibition is narrowly tailored (or even closely connected) to achieving any state interest. Thus, Virginia's Marriage Prohibition cannot withstand heightened scrutiny.

### B. Virginia's Marriage Prohibition Cannot Withstand Rational Basis Review.

In fact, Virginia's Marriage Prohibition cannot withstand *any* level of constitutional scrutiny because it is plain that its "purpose and effect" is to "disparage and injure" gay men and lesbians—the very same purpose and effect that led the Supreme Court to invalidate Section 3 of DOMA. *Windsor*, 133 S. Ct. at 2696.[2] Virginia's Marriage Prohibition "demeans" same-sex couples, "places [them] in an unstable position," "humiliates tens of thousands of children now being raised by same-sex couples," and "instructs all [State] officials, and indeed all persons with whom same-sex couples interact, including their own children, that their [relationship] is less

---

[2] Defendant Rainey contends that Plaintiffs in this case should have challenged the constitutionality of Section 2 of DOMA, 28 U.S.C. § 1738C, and provided notice of this action to the Attorney General. Rainey Opp. at 15, 19. But Plaintiffs are not challenging the constitutionality of Section 2 of DOMA or any other federal statute. Nothing in any federal enactment, including DOMA, could authorize the Commonwealth to deny Plaintiffs their federal constitutional rights.

7

worthy than the [relationships] of others." *Id.* at 2694–96.

Defendants do not even attempt to explain how excluding gay men and lesbians from the institution of marriage "promotes responsible procreation and optimal childrearing." Rainey Opp. at 15. Prohibiting gay men and lesbians from marrying does not conceivably make it more likely that opposite-sex couples will marry, become biological parents, or rear their children together. Nor does it make it more likely that gay men and lesbians will enter into assertedly "optimal" opposite-sex relationships. Indeed, Defendant Schaefer *concedes* that the support required to enact Virginia's Marriage Prohibition was gained not by reference to these purported justifications, but through inflammatory media campaigns designed to "whip up voter fervor" against gay men and lesbians—anti-gay rhetoric designed to "drive citizens to the polls." Schaefer Opp. at 2; *see also* R. 26-6, 26-7, 26-9: Lustig Decl. Exs. A, B, D.; R. 26-5: Lustig Decl. ¶ 16. While Plaintiffs need not prove that Virginia's Marriage Prohibition was motivated by animus to prevail in this case—the absence of any rational basis for Virginia's Marriage Prohibition is sufficient, standing alone, to render it unconstitutional—Defendant Schaefer's admission is sufficient to establish that this fervor of anti-gay animus is what persuaded legislators and voters that the institution of marriage had to be "defended" against gay men and lesbians by enacting the laws at issue. *See* R. 26-7, 26-9, 26-10: Lustig Decl. Exs. B, D, E.[3]

---

[3] Defendants contend it is improper for the Court to "take judicial notice of the content of various newspaper articles." Rainey Opp. at 6. But courts routinely take judicial notice of newspaper articles under Federal Rule of Evidence 201. *See, e.g., Ieradi v. Mylan Labs., Inc.*, 230 F.3d 594, 598 n.2 (3d Cir. 2000); *The Washington Post v. Robinson*, 935 F.2d 282, 291–92 (D.C. Cir. 1991); *Alizai v. MVM, Inc.*, 40 F. Supp. 2d 752, 756 (E.D. Va. 1998). And the contents of the articles are not subject to reasonable dispute. *See* Schaefer Opp. at 2. Moreover, the articles are being offered only to establish that certain statements were made, not for their truth. *See Martin v. City of Indianapolis*, 192 F.3d 608, 613 (7th Cir. 1999) (admitting newspaper statements); *Jauch v. Corley*, 830 F.2d 47, 52 (5th Cir. 1987) (same).

Defendants also maintain that Plaintiffs should simply await a legislative remedy for their injuries. They argue that because gay men and lesbians retain some basic contracting rights (Schaefer Opp. at 5–6) and because their conduct has not been criminalized (*id*. at 8–10), they should accept Virginia's Marriage Prohibition until public opinion enables its repeal. *See id*. at 10 ("There is a trend of a few states repealing these laws, and if societal views toward same sex relationships have changed, other states, like Virginia will eventually follow suit."). Maybe the legislature would someday repeal Virginia's Marriage Prohibition, but just as they should not have to move to Maryland, Plaintiffs should not be made to wait for the Commonwealth to respect their fundamental rights and to accord their relationships and families equal dignity and respect. The "[r]ights and privileges of hundreds of thousands of persons would be adversely affected" in the interim, and the "costs, uncertainties, and alleged harm and injuries would likely continue for a time measured in years before the issue is resolved." *Windsor*, 133 S. Ct. at 2688. As with DOMA, "no legitimate purpose overcomes the purpose and effect to disparage and injure" gay men and lesbians in this manner. *Windsor*, 133 S. Ct. at 2696. Thus, it is the Court's constitutional responsibility to strike down Virginia's Marriage Prohibition.

**III.  Plaintiffs Are Entitled To A Preliminary Injunction.**

In the event this Court declines to grant summary judgment, Plaintiffs request that the Court preliminarily enjoin application of Virginia's Marriage Prohibition *as to them* pending final judgment. Bizarrely, Defendant Schaefer argues that Plaintiffs will not be irreparably injured by the denial of a preliminary injunction because "[t]he harm they allege has already occurred," and because "their financial as well as mental and emotional damage already exists." Schaefer Opp. at 13–14. But the fact that Plaintiffs have been denied their constitutional rights "for decades" cannot justify the irreparable harm that Plaintiffs continue to suffer each additional day that Virginia's Marriage Prohibition remains in force. *See Johnson v. Bergland*, 586 F.2d

9

993, 995 (4th Cir. 1978); *see also* R. 26-1: Bostic Decl. ¶ 18; R. 26-2: London Decl. ¶ 20; R. 26-3: Schall Decl. ¶¶ 20, 31; R. 26-4: Townley Decl. ¶ 20.

Defendant Schaefer also argues that granting Plaintiffs' request for a preliminary injunction would create an administrative "nightmare" that would require tracking "same sex marriages entered during the injunction period" and potentially retracting state and federal benefits if Virginia's Marriage Prohibition is ultimately upheld. Schaefer Opp. at 14. But Plaintiffs seek an order preliminarily enjoining Defendants from enforcing Virginia's Marriage Prohibition only against them. *See* Plaintiffs' Moving Br. at 32–35. Accordingly, any administrative burden to the Commonwealth will surely be negligible.

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in Plaintiffs' opening memorandum, Plaintiffs respectfully request that this Court grant them summary judgment or, in the alternative, enter a preliminary injunction preventing application of Virginia's Marriage Prohibition to Plaintiffs pending final judgment.

Dated:  October 31, 2013                              Respectfully submitted,

/s/ Charles B. Lustig
Thomas B. Shuttleworth, VSB # 13330
tshuttleworth@srgslaw.com
Robert E. Ruloff, VSB # 13471
rruloff@srgslaw.com
Charles B. Lustig, VSB # 29442
clustig@srgslaw.com
Andrew M. Hendrick, VSB # 42852
ahendrick@srgslaw.com
Erik C. Porcaro, VSB # 84793
eporcaro@srgslaw.com
SHUTTLEWORTH, RULOFF, SWAIN,
HADDAD & MORECOCK, P.C.
4525 South Blvd., Suite 300
Virginia Beach, VA 23452
T: (757) 671-6000
F: (757) 671-6004

David Boies, *admitted pro hac vice*
dboies@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
333 Main St.
Armonk, NY 10504
T: (914) 749-8200
F: (914) 749-8300

Robert B. Silver, *admitted pro hac vice*
rsilver@bsfllp.com
Joshua I. Schiller, *admitted pro hac vice*
jischiller@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
T: (212) 446-2300
F: (914) 446-2350

William A. Isaacson, *admitted pro hac vice*
wisaacson@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015
T: (202)237-2727
F: (202)237-6131

Jeremy M. Goldman, *admitted pro hac vice*
jgoldman@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
T: (510) 874-1000
F: (510)874-1460

*Counsel for Plaintiffs*

Theodore B. Olson, *admitted pro hac vice*
tolson@gibsondunn.com
Matthew D. McGill, *admitted pro hac vice*
mmcgill@gibsondunn.com
Amir C. Tayrani, *admitted pro hac vice*
atayrani@gibsondunn.com
Chantale Fiebig, *admitted pro hac vice*
cfiebig@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
T: (202) 955-8668
F: (202) 467-0539

Theodore J. Boutrous, Jr., *admitted pro hac vice*
tboutrous@gibsondunn.com
Joshua S. Lipshutz, *admitted pro hac vice*
jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520

*Counsel for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 31st day of October, 2013, I electronically filed the foregoing Reply Memorandum In Further Support Of Plaintiffs' Motion For Summary Judgment Or, In The Alternative, Preliminary Injunction with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to E. Duncan Getchell, Jr., Esq., Counsel for Defendant Rainey, and to David B. Oakley, Esq., Counsel for Defendant Schaefer.

    Respectfully submitted,

/s/ Charles B. Lustig
Thomas B. Shuttleworth, VSB # 13330
tshuttleworth@srgslaw.com
Robert E. Ruloff, VSB # 13471
rruloff@srgslaw.com
Charles B. Lustig, VSB # 29442
clustig@srgslaw.com
Andrew M. Hendrick, VSB # 42852
ahendrick@srgslaw.com
Erik C. Porcaro, VSB # 84793
eporcaro@srgslaw.com
SHUTTLEWORTH, RULOFF, SWAIN,
HADDAD & MORECOCK, P.C.
4525 South Blvd., Suite 300
Virginia Beach, VA 23452
T: (757) 671-6000
F: (757) 671-6004

David Boies, *admitted pro hac vice*
dboies@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
333 Main St.
Armonk, NY 10504
T: (914) 749-8200
F: (914) 749-8300

Robert B. Silver, *admitted pro hac vice*
rsilver@bsfllp.com
Joshua I. Schiller, *admitted pro hac vice*
jischiller@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP

Theodore B. Olson, *admitted pro hac vice*
tolson@gibsondunn.com
Matthew D. McGill, *admitted pro hac vice*
mmcgill@gibsondunn.com
Amir C. Tayrani, *admitted pro hac vice*
atayrani@gibsondunn.com
Chantale Fiebig, *admitted pro hac vice*
cfiebig@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
T: (202) 955-8668
F: (202) 467-0539

575 Lexington Avenue
New York, NY 10022
T: (212) 446-2300
F: (914) 446-2350

William A. Isaacson, *admitted pro hac vice*
wisaacson@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015
T: (202)237-2727
F: (202)237-6131

Jeremy M. Goldman, *admitted pro hac vice*
jgoldman@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
T: (510) 874-1000
F: (510)874-1460

*Counsel for Plaintiffs*

Theodore J. Boutrous, Jr., *admitted pro hac vice*
tboutrous@gibsondunn.com
Joshua S. Lipshutz, *admitted pro hac vice*
jlipshutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520

*Counsel for Plaintiffs*