Jordan W. Lorence, VA Bar No. 33655
M. Casey Mattox, VA Bar No. 47148
ALLIANCE DEFENDING FREEDOM
801 G Street N.W., Suite 509
Washington, D.C. 20001
Tel: (202) 393-8690
Fax: (480) 444-0028
jlorence@alliancedefendingfreedom.org
cmattox@alliancedefendingfreedom.org

Byron J. Babione,* AZ Bar No. 024320
Kenneth J. Connelly,* AZ Bar No. 025420
J. Caleb C. Dalton, VA Bar No. 83790
ALLIANCE DEFENDING FREEDOM
15100 N 90th Street
Scottsdale, Arizona 85260
Tel: (480) 444-0020
Fax: (480) 444-0028
bbabione@alliancedefendingfreedom.org
kconnelly@alliancedefendingfreedom.org
cdalton@alliancedefendingfreedom.org
* Pro Hac Vice Applications pending

Counsel for Intervenor-Defendant

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA – NORFOLK DIVISION

| | |
|---|---|
| TIMOTHY B. BOSTIC, *et al.*, | Civil Action No. 2:13-cv-395 |
| Plaintiffs, | |
| v. | **MEMORANDUM OF LAW IN SUPPORT** |
| JANET M. RAINEY, in her official capacity as State Registrar of Vital Records, *et al.*, | **OF MOTION TO INTERVENE** |
| Defendants, | |
| and | |
| MICHÈLE B. MCQUIGG, in her official capacity as Prince William County Clerk of Circuit Court, | |
| Proposed Intervenor-Defendant. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

NATURE OF THE CASE ......................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT ............................................................................................................................ 3

I.      CLERK MCQUIGG IS ENTITLED TO INTERVENE AS OF RIGHT. .......................... 4

      A.      The Application is Timely. .................................................................................. 4

      B.      Clerk McQuigg Has Significantly Protectable Interests in the Subject
              Matter of this Action. ......................................................................................... 6

      C.      Absent Clerk McQuigg's Intervention as a Party, the Court's Ruling Will
              Impair Her Significantly Protectable Interests. ................................................ 10

      D.      The Existing Parties Will Not Adequately Represent Clerk McQuigg's
              Interests. ............................................................................................................ 11

             1.      The existing parties cannot adequately represent Clerk McQuigg's
                     interest in clarity. ................................................................................ 12

             2.      The existing parties may not represent Clerk McQuigg's interest in
                     pursuing an appeal that will zealously defend Virginia's Marriage
                     Laws. ................................................................................................... 13

II.     CLERK MCQUIGG IS ENTITLED TO PERMISSIVE INTERVENTION. .................. 15

CONCLUSION ....................................................................................................................... 17

CERTIFICATE OF SERVICE ................................................................................................ 19

# TABLE OF AUTHORITIES

## *Cases*:

*Alameda Newspapers, Inc. v. City of Oakland*,
    95 F.3d 1406 (9th Cir. 1996) ............................................................................9

*American Ass'n of People with Disabilities v. Herrera*,
    257 F.R.D. 236 (D.N.M. 2008)...........................................................................8

*Blake v. Pallan*,
    554 F.2d 947 (9th Cir. 1977) ..............................................................................7

*Board of Education of Central School District No. 1 v. Allen*,
    392 U.S. 236 (1968)............................................................................................9

*Bogaert v. Land*,
    No. 1:08-CV-687, 2008 WL 2952006 (W.D. Mich. July 29, 2009)...................8

*Camreta v. Greene*,
    131 S. Ct. 2020 (2011).......................................................................................8

*Conaway v. Deane*,
    932 A.2d 571 (Md. 2007) ...................................................................................6

*Diagnostic Devices, Inc. v. Taidoc Technology Corp.*,
    257 F.R.D. 96 (W.D.N.C. 2009).......................................................................16

*Gasperini v. Center for Humanities, Inc.*,
    518 U.S. 415 (1996)............................................................................................8

*Gould v. Alleco, Inc.*,
    883 F.2d 281 (4th Cir. 1989) ..............................................................................4

*Harris v. Pernsley*,
    820 F.2d 592 (3d Cir. 1987)................................................................................7

*Hernandez v. Robles*,
    855 N.E.2d 1 (N.Y. 2006)...................................................................................6

*Hill v. Western Electric Co., Inc.*,
    672 F.2d 381 (4th Cir. 1982) ..............................................................................5

*Hodgson v. United Mine Workers of America*,
    473 F.2d 118 (D.C. Cir. 1972)............................................................................5

*Hollingsworth v. Perry*,
    133 S. Ct. 2652 (2013)......................................................................................16

*In re Sierra Club*,
    945 F.2d 776 (4th Cir. 1991) ...................................................................11

*JLS, Inc. v. Public Service Commission of West Virginia*,
    321 F. App'x 286 (4th Cir. 2009) ......................................................... 14-15

*Kootenai Tribe of Idaho v. Veneman*,
    313 F.3d 1094 (9th Cir. 2002) ...............................................................17

*Lockyer v. City & County of San Francisco*,
    95 P.3d 459 (Cal. 2004) ...........................................................................6

*Marino v. Ortiz*,
    484 U.S. 301 (1988).............................................................................9, 11

*National Ass'n for Advancement of Colored People v. New York*,
    413 U.S. 345 (1973)..................................................................................4

*Pellegrino v. Nesbit*,
    203 F.2d 463 (9th Cir. 1953) ...............................................................5, 9

*Richardson v. Ramirez*,
    418 U.S. 24 (1974)....................................................................................9

*Sherman v. City of Richmond*,
    543 F. Supp. 447 (E.D. Va. 1982) .......................................................3, 12

*Smelt v. County of Orange*,
    447 F.3d 673 (9th Cir. 2006) ....................................................................6

*Spring Construction Co., Inc. v. Harris*,
    614 F.2d 374 (4th Cir. 1980) ....................................................................4

*Teague v. Bakker*,
    931 F.2d 259 (4th Cir. 1991) ..............................................................4, 6, 7

*Trbovich v. United Mine Workers*,
    404 U.S. 528 (1972)................................................................................11

*United Airlines, Inc. v. McDonald*,
    432 U.S. 385 (1977)..................................................................................5

*United Guaranty Residential Insurance Co. of Iowa v. Philadelphia Savings Fund Society*,
    819 F.2d 473 (4th Cir. 1987) .....................................................13, 14, 15

*United States Casualty Co. v. Taylor*,
    64 F.2d 521 (4th Cir. 1933) ......................................................................5

*United States v. Covington Technologies Co.*,
    967 F.2d 1391 (9th Cir. 1992) ...................................................................5

*United States v. Virginia*,
    282 F.R.D. 403 (E.D. Va. 2012) ........................................................... 7-8

*Wade v. Goldschmidt*,
    673 F.2d 182 (7th Cir. 1982) ....................................................................7

**<u>Statutes and Constitutional Provisions</u>:**

Va. Code § 20-13 .............................................................................................2

Va. Code § 20-14 ..........................................................................................2, 7

Va. Code § 20-16 .............................................................................................2

Va. Code § 20-33 ..........................................................................................3, 7

Va. Code § 20-45.2 ..........................................................................................2

Va. Code § 20-45.3 ..........................................................................................2

Va. Code § 24.2-233 .....................................................................................3, 7

Va. Code § 32.1-251 .......................................................................................12

Va. Code § 32.1-252 .......................................................................................12

Va. Code § 32.1-267 .......................................................................................12

Va. Const. art. I, § 15-A ...................................................................................2

Va. Const. art. II, § 7 .....................................................................................3, 8

Va. Const. art. VII, § 4 ................................................................................3, 12

**<u>Other Authorities</u>:**

Fed R. Civ. P. 24 .....................................................................................3, 4, 15

Vikram Amar, *If the Supreme Court Decides the Proposition 8 Sponsors Lack Standing,
What Will Happen to Same-Sex Marriage in California?*, Verdict (Apr. 26, 2013),
http://verdict.justia.com/2013/04/26/if-the-supreme-court-decides-the-proposition-8-
sponsors-lack-standing ....................................................................................10

6 Edward J. Brunet, *Moore's Federal Practice* § 24.03[4][a] (3d ed. 1997) ................12

Warren Fiske, *Mark Herring Reverses Position on Gay Marriage*, PolitiFact Virginia
(June 24, 2013), http://www.politifact.com/virginia/statements/2013/jun/24/mark-
herring/mark-herring-reverses-position-gay-marriage/ .................................................................14

Mark Herring, *An Equality Agenda* (Apr. 5, 2013), *available at*
http://files.www.herringforag.com/MHAG_Equality_Agenda_Final.pdf....................................14

Emily Schultheis, *GOP Sen. Mark Obenshain Concedes in Virginia Attorney General
Race*, Politico (Dec. 18, 2013), http://www.politico.com/
story/2013/12/mark-obenshain-mark-herring-virginia-attorney-general-race-101285.html. ........13

Proposed Intervenor-Defendant, Michèle B. McQuigg, in her official capacity as Prince William County Clerk of Circuit Court ("Clerk McQuigg"), by and through counsel, respectfully submits this Memorandum of Law in Support of Motion to Intervene.

## NATURE OF THE CASE

On September 3, 2013, Plaintiffs filed their First Amended Complaint in which they seek, pursuant to 42 U.S.C. § 1983, a declaration that Virginia Code §§ 20-45.2 and 20-45.3, and Article I, § 15-A of the Virginia Constitution ("Virginia's Marriage Laws") are unconstitutional. Dkt. No. 18.  Plaintiffs claim that Virginia's Marriage Laws, which define marriage as between one man and one woman, violate their rights to due process and equal protection under the United States Constitution.  Consequently, Plaintiffs seek statewide preliminary and permanent injunctions enjoining the enforcement of those laws.  *See* Pls.' First Am. Compl. 18 ¶ 2 ("Plaintiffs respectfully request that this Court enter a preliminary and a permanent injunction enjoining enforcement or application of [Virginia's Marriage Laws] and any other Virginia law that bars same-sex marriage or prohibits the State's recognition of otherwise-lawful same-sex marriages from other jurisdictions.").

Plaintiffs had originally named as defendants in their official capacities Governor Robert F. McDonnell, Attorney General Kenneth T. Cucinelli, and Clerk of Court for Norfolk Circuit Court George E. Schaefer, III.  In their September 3, 2013 Amended Complaint, Plaintiffs added as a defendant in her official capacity State Registrar of Vital Records Janet M. Rainey.  On September 5, 2013, Plaintiffs filed a Notice of Voluntary Dismissal with respect to both Governor McDonnell and Attorney General Cucinelli.  Dkt. No. 19.  But State Registrar Rainey and Clerk Schaefer remain as named defendants.

1

## STATEMENT OF FACTS

The People of Virginia, through the passage of Virginia's Marriage Laws, have defined marriage as a legal union between one man and one woman.  *See, e.g.*, Va. Const. art. I, § 15-A ("[O]nly a union between one man and one woman may be a marriage valid in or recognized by this Commonwealth and its political subdivisions.").  And the Virginia General Assembly has declared that the State will not recognize marriages or civil unions between persons of the same sex.  *See* Va. Code § 20-45.2 ("A marriage between persons of the same sex is prohibited.  Any marriage entered into by persons of the same sex in another state or jurisdiction shall be void in all respects in Virginia and any contractual rights created by such marriage shall be void and unenforceable."); Va. Code § 20-45.3 ("A civil union, partnership contract or other arrangement between persons of the same sex purporting to bestow the privileges or obligations of marriage is prohibited.  Any such civil union, partnership contract or other arrangement entered into by persons of the same sex in another state or jurisdiction shall be void in all respects in Virginia and any contractual rights created thereby shall be void and unenforceable.").

In Virginia, clerks of court are responsible for ensuring compliance with Virginia's Marriage Laws and for issuing marriage licenses pursuant to those laws.  *See* Va. Code § 20-13 ("Every marriage in this Commonwealth shall be under a license and solemnized in the manner herein provided."); Va. Code § 20-14 ("Every license for a marriage shall be issued by the clerk or deputy clerk of a circuit court of any county or city."); Va. Code § 20-16 ("The clerk issuing any marriage license shall before issuing the license require the parties contemplating marriage to state, under oath, or by affidavit or affidavits filed with him, made by the parties for whom the application is made, before a person qualified to take acknowledgments or administer oaths, the information required to complete the marriage record.").

Each clerk of court is an elected, constitutional officer, *see* Va. Const. art. VII, § 4, who operates independently of other government officials.  *See Sherman v. City of Richmond*, 543 F. Supp. 447, 449 (E.D. Va. 1982) (stating that a sheriff was a constitutional officer by virtue of Va. Const. art. VII, § 4, and holding that as a consequence he or she "serves independent of the municipal or county government and independent of the State government").  Thus, each clerk must, before taking office, swear an oath to support the laws of both the United States and the Commonwealth of Virginia.  *See* Va. Const. art. II, § 7 ("I do solemnly swear (or affirm) that I will support the Constitution of the United States, and the Constitution of the Commonwealth of Virginia, and that I will faithfully and impartially discharge all the duties incumbent upon me as _____, according to the best of my ability (so help me God).").  The clerks of court, therefore, must enforce Virginia's Marriage Laws—indeed, if a clerk were to contravene his or her sworn duty in this regard, he or she would be subject to potential imprisonment and a fine, or even removal from office.  *See* Va. Code § 20-33 ("If any clerk of a court knowingly issue a marriage license contrary to law, he shall be confined in jail not exceeding one year, and fined not exceeding $500."); Va. Code § 24.2-233 ("Upon petition, a circuit court may remove from office any elected officer or officer . . . [f]or neglect of duty, misuse of office, or incompetence in the performance of duties . . .").

## <u>ARGUMENT</u>

Federal Rule of Civil Procedure 24(a)(2) provides that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  The Fourth Circuit has interpreted this rule to entitle an applicant to intervention if it can demonstrate: "(1) an interest in the subject matter of the action;

(2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation." *Teague v. Bakker*, 931 F.2d 259, 260-61 (4th Cir. 1991). In addition to intervention of right, Federal Rule of Civil Procedure 24(b)(1)(B) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." In the exercise of its discretion under this permissive intervention rule, a court must consider whether permissive intervention "will unduly delay or prejudice the adjudication of the original parties' rights." Fed R. Civ. P. 24(b)(3). In this case, Clerk McQuigg satisfies all the requirements for both intervention as of right and permissive intervention.

## I.     CLERK MCQUIGG IS ENTITLED TO INTERVENE AS OF RIGHT.

### A.     The Application is Timely.

The "timeliness requirement is determined by a court in the exercise of its discretion," and generally a "reviewing court should look at how far the suit has progressed, the prejudice which delay might cause other parties, and the reason for the tardiness in moving to intervene." *Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989). While "the point to which the suit has progressed is one factor in the determination of timeliness, it is not solely dispositive." *Nat'l Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345, 365-66 (1973). Indeed, the "[m]ere passage of time is but one factor to be considered in light of all the circumstances," and the "most important consideration is whether the delay has prejudiced the other parties." *Spring Const. Co., Inc. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980).

Clerk McQuigg's motion is timely because it will not result in any delay or prejudice to the parties or the Court. Although the parties have completed briefing on cross-motions for summary judgment pursuant to the Court's scheduling order, the Court has yet to rule on those motions. And notably, Clerk McQuigg has declined to file any additional briefing on the

4

pending cross-motions for summary judgment; instead, she has joined the dispositive motions already filed by the existing defendants.  Nor does Clerk McQuigg seek to modify this Court's scheduling order or in any way disrupt the current posture of this case.  Therefore, Clerk McQuigg's intervention does not pose any concerns related to fairness to the existing parties or judicial economy.

The conclusion that intervention is timely here is bolstered by the fact that courts have routinely permitted intervention *even after* judgment has been entered.  *See, e.g.*, *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395 (1977) (affirming that intervention was proper even after final judgment and noting that the Court's conclusion was "consistent with several decisions of the federal courts permitting post-judgment intervention for the purpose of appeal"); *Hill v. W. Elec. Co., Inc.*, 672 F.2d 381, 387 (4th Cir. 1982) (vacating a district court order denying intervention and stating that "[t]o the extent any more stringent standard for intervention following judgment is warranted . . . it must be based upon heightened prejudice to the parties and more substantial interference with the orderly process of the court in that context," and further concluding that "[i]f neither of these results would occur the mere fact that judgment already has been entered should not by itself require an application for intervention to be denied" (quotation marks and citations omitted)); *United States Cas. Co. v. Taylor*, 64 F.2d 521, 526 (4th Cir. 1933) (permitting intervention after judgment and noting that such intervention is proper "if the party applying for intervention has a direct legal interest in the pending litigation"); *see also United States v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992) (concluding that a post-judgment motion to intervene by a government party was timely); *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118 (D.C. Cir. 1972) (permitting intervention after judgment was rendered); *Pellegrino v. Nesbit*, 203 F.2d 463, 465-66 (9th Cir. 1953) ("Intervention should be

allowed even after a final judgment where it is necessary to preserve some right . . . [such as] the right to appeal from the judgments entered on the merits by the District Court.").

**B.    Clerk McQuigg Has Significantly Protectable Interests in the Subject Matter of this Action.**

Clerk McQuigg has myriad significantly protectable interests in the subject matter of this litigation. *See Teague*, 931 F.2d at 261  (noting that "[w]hile Rule 24(a) does not specify the nature of the interest required for a party to intervene as a matter of right,  the Supreme Court has recognized that [w]hat is obviously meant is a significantly protectable interest" (quotation marks and citations omitted)).    Plaintiffs themselves implicitly concede, by naming Clerk Schaefer in this action, that clerks of court in Virginia have a significantly protectable interest in litigation directly challenging the constitutionality of Virginia's Marriage Laws.    Indeed, Plaintiffs recognize in their First Amended Complaint that Clerk Schaefer "has the duty to issue marriage licenses" and is "responsible for ensuring compliance with Virginia's marriage laws, including . . . determining whether individuals meet the requirements for marriage in Virginia as reflected in the couple's application for a marriage license."  Pls.' First Am. Compl. ¶ 15.[1]  The very same could be said of Clerk McQuigg with respect to Prince William County.

As the public official in Prince William County charged with enforcing Virginia's Marriage Laws, Clerk McQuigg has a significantly protectable interest, indeed a constitutional interest, in discharging her marriage-related duties and enforcing Virginia's Marriage Laws. Plaintiffs attack the constitutionality of those laws, and seek not only a declaration that they are

---

[1] County clerks in many sister states perform analogous marriage functions to Virginia clerks of court, and are thus frequently defendants in same-sex marriage litigation.  *See, e.g.*, *Smelt v. County of Orange*, 447 F.3d 673 (9th Cir. 2006) (lawsuit against Orange County clerk for injunction and declaratory relief establishing that California law prohibiting same-sex marriage was unconstitutional); *Lockyer v. City & County of San Francisco*, 95 P.3d 459 (Cal. 2004) (county clerks sued for unlawfully issuing marriage licenses to same-sex couples); *Conaway v. Deane*, 932 A.2d 571 (Md. 2007) (same-sex couples sue county clerks for refusing to issue marriage licenses); *Hernandez v. Robles*, 855 N.E.2d 1 (N.Y. 2006) (same).

unconstitutional, but also a statewide injunction barring their enforcement.  As detailed above, clerks of court are constitutional officers in Virginia, duty-sworn to ensure, among other things, that Virginia's Marriage Laws are properly enforced and administered.  *See* Va. Code §§ 20-14, 20-33.  Clerk McQuigg may not issue marriage licenses without first ensuring that all statutory requirements have been met, and any failure on this score could subject her to potential imprisonment, fines, or removal from office.  *See* Va. Code § 20-33, § 24.2-233.

Given the responsibilities borne by clerks of court with respect to marriage in Virginia, the interest test is easily met here by Clerk McQuigg.  *See Wade v. Goldschmidt,* 673 F.2d 182, 185 (7th Cir. 1982) (in a suit "brought to require compliance with federal statutes regulating governmental projects," noting that the "governmental bodies charged with compliance can be the only defendants").  Indeed, it is axiomatic in the Fourth Circuit that where a proposed intervenor may be affected "by the direct legal operation of the district court's judgment," he or she will be found to have a "significantly protectable interest."  *Teague*, 931 F.2d at 261.  More specifically, where a government official's "rights and duties" as defined by state law "may be affected directly by the disposition of [the] litigation," that official has a "sufficient interest to intervene as of right in [the] action."  *Harris v. Pernsley*, 820 F.2d 592, 597 (3d Cir. 1987); *see also Blake v. Pallan*, 554 F.2d 947, 953 (9th Cir. 1977) (citing *Hines v. D'Artois*, 531 F.2d 726, 738 (5th Cir. 1976) (holding that a government "official has a sufficient interest in adjudications which will directly affect his own duties and powers under the state laws")).

It is beyond cavil that this Court's adjudication of this case may affect Clerk McQuigg's "rights and duties" under Virginia's Marriage Laws.  This is especially so given the broad scope of the relief requested by Plaintiffs—namely, their request for a statewide injunction prohibiting government officials from enforcing Virginia's Marriage Laws.  *See United States v. Virginia*,

282 F.R.D. 403, 405 (E.D. Va. 2012) (granting a motion to intervene where "the Complaint contain[ed] a very broad request for relief that directly implicate[d] the rights and interests of the Petitioners").  Her significantly protectable interest in this case is therefore undeniable.  *See Am. Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236, 256 (D.N.M. 2008) ("This direct effect on what [a county official] can and cannot do as a county clerk is the direct and substantial effect that is recognized as a legally protectable interest"); *Bogaert v. Land*, No. 1:08-CV-687, 2008 WL 2952006, at *2-3 (W.D. Mich. July 29, 2009) (permitting county officials to intervene where the plaintiffs sought an injunction that might change the clerks' legal obligations).[2]

Perhaps less obvious, but no less important, is Clerk McQuigg's interest in knowing definitively the nature of her marriage-related duties going forward.  Because any ruling by this Court could potentially impact what she must and must not do, Clerk McQuigg has an interest in clarity as to the precise contours of her post-judgment responsibilities.  That clarity can be attained only by her inclusion as a defendant.  This is so because "'[a] decision of a federal district court judge is not binding precedent in . . . a different judicial district, the same judicial district, or even upon the same judge in a different case.'"  *Camreta v. Greene*, 131 S. Ct. 2020, 2033 n.7 (2011) (quoting 18 J. Moore et al., *Moore's Federal Practice* § 134.02[1][d], at 134-26 (3d ed. 2011)); *see also Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 430 n.10 (1996) (stating that every federal district court judge "sits alone and renders decisions not binding on the others").

Because this Court's decision will not serve as binding precedent on Clerk McQuigg, it is only by intervening as a party defendant that she can be sure she is bound by any judgment

---

[2] In addition, Clerk McQuigg has a sworn duty to uphold and defend the Virginia Constitution, including the marriage provision challenged in this case.  *See* Va. Const. Art. II, § 7.  This forms part of her significantly protectable interest in this litigation.

issued by this Court.  If she is not added as a party and this Court grants Plaintiffs the relief they seek—thus declaring Virginia's Marriage Laws unconstitutional and entering an injunction declaring them unenforceable throughout the Commonwealth—she will be in a position of significant uncertainty and confusion.  *See* McQuigg Declaration ¶ 5.  This ambiguity is particularly troubling for Clerk McQuigg, who, as explained above, faces potential imprisonment, fines, or removal from office for missteps in her official duties.  Thus, she has a significantly protectable interest in intervening so that she will be bound by this Court's ruling and will know with certainty her marriage-related rights and duties in the wake of this Court's decision.

Finally, Clerk McQuigg has a significantly protectable interest in appealing any potentially adverse decision this Court may render with respect to Virginia's Marriage Laws. *See Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per curiam) (endorsing the practice of "interven[ing] for purposes of appeal"); *Alameda Newspapers, Inc. v. City of Oakland*, 95 F.3d 1406, 1412 n.8 (9th Cir. 1996) ("[A party's] right to intervene for the purpose of appealing is well established"); *Pellegrino,* 203 F.2d at 465-66) ("Intervention should be allowed . . . to preserve . . . the right to appeal from judgments entered on the merits by the District Court."). This interest is not limited to ensuring that an appeal is lodged, but also to ensuring that a zealous substantive defense of Virginia's Marriage Laws is presented to the appellate courts.  Clerk McQuigg undoubtedly would have standing to pursue such an appeal.  *See Richardson v. Ramirez*, 418 U.S. 24, 34-40 (1974) (concluding that "a live case or controversy" existed when a county official appealed to the Supreme Court a ruling invalidating a law that the clerk administered); *Bd. of Educ. of Cent. Sch. Dist. No. 1 v. Allen*, 392 U.S. 236, 241 n.5 (1968) (concluding that "[t]here can be no doubt" that local officials charged with official duties under

state and local laws "have a 'personal stake in the outcome' of . . . litigation" involving the constitutionality of those laws).

### C. Absent Clerk McQuigg's Intervention as a Party, the Court's Ruling Will Impair Her Significantly Protectable Interests.

As a practical matter, the outcome of this action has the potential to adversely affect Clerk McQuigg's significantly protectable interests in this litigation. Most notably, if this Court deems Virginia's Marriage Laws constitutionally infirm, Clerk McQuigg would have to be a named defendant to be bound by this Court's judgment. Without the certainty provided by her official status as a defendant, any injunction purporting to enjoin the enforcement of those laws would subject her to conflicting duties and potential legal liability. On the one hand, this Court's injunction would purportedly order her to cease enforcing Virginia's Marriage Laws. But on the other hand, because she is not a party, she would not be directly bound by this Court's judgment. This would leave her in an unenviable position: her duties would be uncertain, and she would be exposed to the possibility of jail time, financial penalties, or removal from office if she chooses the wrong course.[3] This prospect alone satisfies the impairment of interest requirement.

That scenario poses additional roadblocks to the orderly resolution of this constitutional question throughout the Commonwealth. If this Court were to enjoin the enforcement of

---

[3] The recently concluded and exceedingly protracted California same-sex marriage litigation is instructive as to the difficult legal issues posed by federal district court injunctions that purport to bind all government officials, even those not before the court. *See* Vikram Amar, *If the Supreme Court Decides the Proposition 8 Sponsors Lack Standing, What Will Happen to Same-Sex Marriage in California?*, Verdict (Apr. 26, 2013), http://verdict.justia.com/2013/04/26/if-the-supreme-court-decides-the-proposition-8-sponsors-lack-standing (explaining that an injunction purporting to bind nonparty county officials might lead to county officials "proactively[] going into court to ask for a clear ruling that [they are] not bound by [the] injunction or, if [they are], to ask that the injunction be reopened because [they] didn't have a chance to participate in the proceedings"). The obvious solution to these difficulties is to permit Clerk McQuigg to intervene now. That will ensure that she is bound by any judgment issued by this Court, achieves clarity as to her duties going forward, and is able to appeal any adverse ruling if necessary.

Virginia's Marriage Laws, the absence of Clerk McQuigg as a defendant would likely necessitate additional litigation, before this Court or others, regarding the effect and scope of the injunction as to her office.  Yet by granting intervention to Clerk McQuigg, this Court will guarantee that she would be able know for certain the scope of her duties following this Court's ruling and would be able to discharge them constitutionally, without hesitation or doubt, and without having to return to this Court for clarification.

Moreover, a ruling striking down Virginia's Marriage Laws would adversely affect Clerk McQuigg's interest in appealing a judgment that purports to impact her marriage-related rights and duties.  If Clerk McQuigg is not allowed to intervene as a party to these proceedings, she will be unable to appeal an adverse decision of this Court.  *See Marino*, 484 U.S. at 304 ("The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled.").  This Court's ruling thus might impair her interest in ensuring that an adverse decision is appealed and that the best substantive defenses are presented to the appellate courts.

### D.     The Existing Parties Will Not Adequately Represent Clerk McQuigg's Interests.

A proposed intervenor satisfies the inadequate representation prong by showing that "representation of its interest '*may be*' inadequate."  *In re Sierra Club*, 945 F.2d 776, 779-80 (4th Cir. 1991) (quoting *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10 (1972)) (quotation marks and citations omitted).  "[T]he burden of making that showing should be treated as minimal."  *Trbovich*, 404 U.S. at 538 n.10.  A proposed intervenor "should be treated [by this Court] as the best judge of whether the existing parties adequately represent . . .  her interests, and . . .  any doubt regarding adequacy of representation should be resolved in [her] favor."  6

Edward J. Brunet, *Moore's Federal Practice* § 24.03[4][a] (3d ed. 1997).  As demonstrated below, no existing party in this case adequately represents the interests of Clerk McQuigg.

        **1.**       **The existing parties cannot adequately represent Clerk McQuigg's interest in clarity.**

The mere presence of Registrar Rainey and Clerk Schaefer as defendants in this matter is insufficient to adequately represent Clerk McQuigg's interest in clarity and certitude.  Even if they have provided the staunchest substantive defense of Virginia's Marriage Laws, neither represent Clerk McQuigg's interest in being definitively bound by any ruling this Court issues— that interest can only be satisfied by her intervention as a defendant.

As to Clerk Schaefer, he is the Clerk of the Circuit Court for Norfolk, Virginia. Clerks of court are constitutional officers whose authority extends only to their particular jurisdiction.  *See* Va. Const. art. VII, § 4 ("There shall be elected by the qualified voters of each county . . . a clerk, who shall be clerk of the court in the office of which deeds are recorded . . . .").  Clerk Schaefer thus has no power or authority to enforce Virginia's Marriage Laws in Prince William County—that is Clerk McQuigg's duty.  Thus any ruling purporting to impose a statewide injunction would bind Clerk Schaefer, but not necessarily Clerk McQuigg.

As to Registrar Rainey, she lacks any statutory or constitutional authority to supervise or direct clerks of court in their enforcement of Virginia's Marriage Laws or in their issuance of marriage licenses.  Registrar Rainey is appointed by the State Commissioner of Health, *see* Va. Code. § 32.1-251, and is tasked with "ensur[ing] the uniform and efficient administration of the system of vital records."  Va. Code § 32.1-252(A)(1).  Additionally, she "furnish[es] forms for the marriage license, marriage certificate, and application for marriage license used in the Commonwealth."  Va. Code § 32.1-267(E).  As a constitutional officer, Clerk McQuigg operates independently of other state and local officials, *see Sherman*, 543 F. Supp. at 449, and this

includes Registrar Rainey.  Registrar Rainey thus has no authority to direct or supervise Clerk McQuigg when Clerk McQuigg is performing her marriage-related duties.  So a ruling from this Court that definitively binds Registrar Rainey would not thereby bind Clerk McQuigg.  Only Clerk McQuigg's presence in the suit as a defendant can adequately represent her interest in clarity.

> ### 2. The existing parties may not represent Clerk McQuigg's interest in pursuing an appeal that will zealously defend Virginia's Marriage Laws.

Where a party can show that "the parties' interests may not dictate the same approach to the conduct of the litigation," the inadequate representation requirement is satisfied, and intervention should be permitted.  *United Guar. Residential Ins. Co. of Iowa v. Phila. Sav. Fund Soc'y*, 819 F.2d 473, 476 (4th Cir. 1987) ("Since the parties' interests *may not dictate the same approach to the conduct of the litigation*, and since the representation of Philadelphia by the Bank may be inadequate, we are of opinion it was error to deny Philadelphia's motions to intervene.") (emphasis added).  Here, it is far from certain that either named defendant will pursue an appeal in the event of an adverse ruling or that either of them will zealously defend Virginia's Marriage Laws before the appellate courts.

This concern is especially acute given the impending change of counsel for Registrar Rainey.  Recently, the Republican candidate in the Virginia Attorney General's race, Mark Obenshain, conceded his defeat.  *See* Emily Schultheis, *GOP Sen. Mark Obenshain Concedes in Virginia Attorney General Race*, Politico (Dec. 18, 2013), http://www.politico.com/story/2013/12/mark-obenshain-mark-herring-virginia-attorney-general-race-101285.html.  This means that Registrar Rainey will soon be represented by now-incoming Democrat Attorney General Mark Herring, who has quite recently and conspicuously changed his position on the issue of marriage.  In 2003, while running unsuccessfully for the state senate, Herring stated that

he believed the Virginia Marriage Laws should affirm marriage between and a man and a woman.  *See* Warren Fiske, *Mark Herring Reverses Position on Gay Marriage*, PolitiFact Virginia (June 24, 2013), http://www.politifact.com/virginia/statements/2013/jun/24/mark-herring/mark-herring-reverses-position-gay-marriage/.  And in February 2006, fifteen days after being sworn in as a state senator, Herring supported a resolution "allowing Virginia voters to decide whether there should be a state constitutional amendment banning gay marriage."  *Id*. Yet he recently executed an abrupt about-face while campaigning for Attorney General, announcing that he believed that "civil marriage is a fundamental right," that he "supports marriage equality for same-gender couples," and that he would "work[] to change the current law prohibiting such marriages."  Mark Herring, *An Equality Agenda* (Apr. 5, 2013), *available at* http://files.www.herringforag.com/MHAG_Equality_Agenda_Final.pdf.

Given these most recent comments, it is likely that Attorney General-elect Herring will not follow the "same approach to the conduct of the litigation" that Clerk McQuigg would.  *See United Guar. Residential Ins. Co. of Iowa*, 819 F.2d at 476.  Even if Herring would file an appeal to an adverse ruling by this Court, it is unlikely that he will zealously defend Virginia's Marriage Laws on appeal, for such a defense would be inconsistent with his public pledge to change those laws.  Of course, it is possible that Herring might defend the challenged laws, but it is not likely given the evidence, and that uncertainty is sufficient to satisfy the inadequate representation requirement.

In contradistinction to Attorney General-elect Herring's expressed antagonism to Virginia's Marriage Laws, Clerk McQuigg is prepared to proffer a comprehensive defense of those laws on appeal (or even at trial, should that eventuality come to pass).  Her increased zeal alone meets the minimal requirements under the inadequate representation prong.  *See JLS, Inc.*

*v. Pub. Serv. Comm'n of W. Va.*, 321 F. App'x 286, 292 (4th Cir. 2009) (finding that the district court abused its discretion in refusing intervention because proposed intervenors showed that their "litigation of [the] suit has been, and would be, significantly more vigorous and effective than" that of a named defendant).

Moreover, it is unclear precisely what Clerk Schaefer's response to an adverse ruling would be, but there is a distinct possibility that Clerk McQuigg's interests may prompt a different "approach to the conduct of the litigation." *United Guar. Residential Ins. Co. of Iowa*, 819 F.2d at 476. Although, in his motion for summary judgment, Clerk Schaefer asserted some of the compelling and legitimate government interests furthered by Virginia's marriage laws, *see* Schaefer's Motion for Summary Judgment at 13, ECF No. 41, he did not raise all the interests previously upheld by other courts, nor did he extensively develop or explain the asserted interests, as Clerk McQuigg would have done. This past practice thus raises the reasonable prospect that even if Clerk Schaefer would appeal an adverse ruling, he would not zealously and comprehensively defend Virginia's Marriage Laws on appeal.

## II. CLERK MCQUIGG IS ENTITLED TO PERMISSIVE INTERVENTION.

Not only is Clerk McQuigg entitled to intervention as of right, she is also entitled to permissive intervention. A court may grant permissive intervention upon a timely motion, provided that a proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact," and the intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b). First, Clerk McQuigg established above that her motion is timely, and the same argument applies with equal force here. Second, Clerk McQuigg will present a defense "that shares with the main action a common question of law or fact." Plaintiffs' claims and Clerk McQuigg's defenses both involve the constitutionality of the Virginia Marriage Laws under the Federal Constitution: Plaintiffs seek a

declaration that those laws violate the Federal Constitution, and Clerk McQuigg contends that those laws comply with the Federal Constitution.  These arguments present inextricably intertwined and completely overlapping questions of law.  Third, the litigation will not be unduly delayed, nor will the existing parties be unduly prejudiced, by Clerk McQuigg's intervention in this case because she has joined in the motions for summary judgment filed by defendants and will submit to the schedule already in place.  Thus permissive intervention is proper here.

Concerns for fairness and judicial economy actually counsel *for* intervention.  As explained above, if this Court issues a statewide injunction against the enforcement of Virginia's Marriage Laws, permitting Clerk McQuigg to intervene will help avoid likely future litigation, before this Court or others, concerning Clerk McQuigg's prospective marriage-related duties. *See Diagnostic Devices, Inc. v. Taidoc Tech. Corp.*, 257 F.R.D. 96, 100 (W.D.N.C. 2009) (noting that permissive intervention "is appropriate to promote judicial efficiency," and permitting it in part because it would "help avoid inconsistent results and promote judicial economy" in the case) (quotation marks and citations omitted).  In addition, if Clerk McQuigg is permitted to intervene as a party defendant, she will ensure that any judgment invalidating Virginia's Marriage Laws will be appealed and that those laws will be given a comprehensive defense before the appellate courts.  This is of real concern because public officials have declined to appeal other decisions striking down challenged marriage laws.  *See, e.g.*, *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2660 (2013) (noting that the defendant "officials elected not to appeal the District Court order").[4] These decisions not to appeal hamper the litigation process and risk leaving these important constitutional questions unrefined by the process of appellate review.  *See id.* at 2674 (Kennedy, J., dissenting) (noting that the end result left "the District Court's judgment, and its

---

[4] This concern is particularly pressing here given Attorney General-elect Herring's change of position on same-sex marriage.

accompanying statewide injunction, effectively immune from appellate review"). Clerk McQuigg's presence as a defendant will prevent that unfortunate scenario from coming to pass.

Finally, the "the magnitude of this case" warrants permissive intervention. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002) (internal quotations omitted) (upholding the district court's grant of permissive intervention because it "gave a good and substantial reason for exercising its discretion to permit . . . permissive intervention" when it concluded that intervention would "contribute to the equitable resolution of [a] case" of great importance), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). It is difficult to conceive of an issue of greater social import to the People of Virginia than the constitutionality of the marriage definition they chose, and Clerk McQuigg's participation as a party defendant will ensure that Virginia's Marriage Laws are zealously defended and that their constitutionality is fully reviewed by the appellate courts. The Court should thus grant Clerk McQuigg's request for permissive intervention.

## CONCLUSION

For the foregoing reasons, this Court should grant Clerk McQuigg's request to intervene as a defendant in this case.

17

Respectfully submitted this the 20th day of December, 2013.


By: _____/s/_____
     M. Casey Mattox, VA Bar No. 47148
     ALLIANCE DEFENDING FREEDOM
     801 G Street N.W., Suite 509
     Washington, D.C. 20001
     Tel: (202) 393-8690
     Fax: (480) 444-0028
     cmattox@alliancedefendingfreedom.org

     *Counsel for Intervenor-Defendant*

Jordan W. Lorence, VA Bar No. 33655
ALLIANCE DEFENDING FREEDOM
801 G Street N.W., Suite 509
Washington, D.C. 20001
Tel: (202) 393-8690
Fax: (480) 444-0028
jlorence@alliancedefendingfreedom.org

Byron J. Babione,* AZ Bar No. 024320
Kenneth J. Connelly,* AZ Bar No. 025420
J. Caleb C. Dalton, VA Bar No. 83790
ALLIANCE DEFENDING FREEDOM
15100 N 90th Street
Scottsdale, Arizona 85260
Tel: (480) 444-0020
Fax: (480) 444-0028
bbabione@alliancedefendingfreedom.org
kconnelly@alliancedefendingfreedom.org
cdalton@alliancedefendingfreedom.org
* *Pro Hac Vice Applications pending*

*Counsel for Intervenor-Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2013, I will electronically file the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following participants:

David B. Oakley
doakley@poolemahoney.com
Jeffrey F. Brooke, Esq.
Poole Mahoney PC
860 Greenbrier Circle, Suite 401
Chesapeake, VA 23320

*Attorneys for Defendant George E. Schaefer, III*

Thomas B. Shuttleworth
tshuttleworth@srgslaw.com
Robert E. Ruloff
rruloff@srgslaw.com
Charles B. Lustig
clustig@srgslaw.com
Andrew Mitchell Hendrick
ahendrick@srgslaw.com
Erik C. Porcaro
eporcaro@srgslaw.com
Shuttleworth, Ruloff, Swain, Haddad &
Morecock, P.C.
4525 South Blvd., Suite 300
Virginia Beach, VA 23452

Joshua Seth Lipshutz
jlipshutz@gibsondunn.com
Gibson, Dunn & Crutcher LLP
555 Mission St., Suite 3000
San Francisco, CA 94105-0921

Robert Brian Silver
rsilver@bsfllp.com
Joshua I. Schiller
jischiller@bsfllp.com
Boies, Schiller & Flexner LLP
575 Lexington Ave., 7th Floor
New York, NY 10022

Theodore J Boutrous, Jr

Earle Duncan Getchell, Jr.
dgetchell@oag.state.va.us
Office of the Attorney General
900 E Main St
Richmond, VA 23219

*Attorney for Defendant Janet M. Rainey*

Chantale Fiebig
cfiebig@gibsondunn.com
Amir C Tayrani
atayrani@gibsondunn.com
Theodore B Olson
tolson@gibsondunn.com
Matthew D McGill
mmcgill@gibsondunn.com
Gibson Dunn & Crutcher LLP
1050 Connecticut Ave, NW
Washington, DC 20036-5306

David Boies
dboies@bsfllp.com
Boies, Schiller & Flexner, LLP
333 Main St.
Armonk, NY 10504

Jeremy Michael Goldman
jgoldman@bsfllp.com
Boies, Schiller & Flexner LLP
1999 Harrison St., Suite 900
Oakland, CA 94612

tboutrous@gibsondunn.com
Gibson, Dunn & Crutcher LLP (CANA)
333 South Grand Ave.
Los Angeles, CA 90071-3197

William Isaacson
wisaacson@bsfllp.com
Boies, Schiller & Flexner
5301 Wisconsin Ave, NW
Washington, DC 20015

*Attorneys for Plaintiffs*


                                          /s/
                                M. Casey Mattox, VA Bar No. 47148
                                ALLIANCE DEFENDING FREEDOM
                                801 G Street N.W., Suite 509
                                Washington, D.C. 20001
                                Tel: (202) 393-8690
                                Fax: (480) 444-0028
                                cmattox@alliancedefendingfreedom.org

                                *Counsel for Intervenor-Defendant*